MRS. VIOLA PITTS ET AL. V. CAMP COUNTY ET AL.

No. 5680   Decided June 10, 1931.
(39 S. W., 2d Series, 608.)

560

*Jones & Jones,* for appellants.

The grant was made by Pitts to the presiding justice and successors in the office for the *use*—not for the grantee, but for the *use* of the public for a designated, specified purpose (courthouse and other necessary buildings).

The grant for the stated use was accepted by the beneficiaries for the purposes and use for which granted (for the building and occupancy of the courthouse and jail).

The beneficiaries, the public of Camp county, discontinued the use of the property, abandoned it and moved to another place.

All of the above facts being admitted by the appellee and conceded in the opinion of this honorable court, we ask what further interest as a matter of law, have the appellees in the property? Why have not the plaintiffs, as heirs of W. H. Pitts, a right of entry and of possession as a matter of law?

The county took no interest other than an equitable one, to-wit: The use of the premises for the purpose named.

In approving and following Galbert v. Ollcott, 86 Texas, 121, the court construed the language: "as a place for erecting a courthouse * * * for the use aforesaid forever" to be declaratory of the use to which the granted premises were to be applied; and since the instrument under interpretation conveyed the land to a certain grantee and his successors in office, omitting any grant or reference to the "assigns" of the grantee, the express trustees named were powerless to convey the property or divert it to any other use, upon the failure of the use, title reverts to the heirs of the grantor.

We entreat the court to focus its attention upon the *granting clause* of the deed; since after all it is axiomatic that this clause is the most important thing in a deed, and certainly the key-note to the estate that is passed by the deed. We also entreat the court to remember that it is not sought to attach a condition to the deed by the interpretation of this granting clause, and that we respectfully insist that the court has no business or concern with conditions, covenants or what not of defeasance, until it has first determined what estate passes by the granting clause to be forfeited. The court aptly states in the opinion that the only *condition* which will defeat the *title* of the grantee of the removal of the county seat, but we respectfully urge that the *title* of the grantee in this case carries with it the elements of its own dissolution, which depend not upon condition, but on limitation.

We appreciate the opinion of the court that the mere declaration of a use does not "ordinarily import a condition", but we respectfully insist that the granting of land for a *special use,* and no other, limits the title conveyed in every instance, and that the Supreme Court of Texas has so held. Stephens County v. Mid-Kansas Oil & Gas Company, 254 S. W., 290.

The use expressed in the granting and habendum clauses of the deed is the *only* use and purpose to which the land is to be put, since the court will certainly apply to the granting and habendum clauses the same rule it applies to the condition subsequent, when it says that the same sets forth

the only condition attached to this case, since—"expression, unius est exclusio altrius—(the expression of one thing is the exclusion of another)."

We do not argue the proposition that the use stated will be held the *only* use to which the property can be put, since certainly the court would not apply the rule of construction just quoted to the condition subsequent in the deed, and refuse to apply it to the more important granting and habendum clauses of the same.

We have been unable to find any authority which holds that anything greater than a base or determinable fee is conveyed where the property is conveyed for a certain use and no other. See Thompson on Real Property, sec. 2106 and 1929 Supplement; 15 L. R. A., 233, and Annotations; 21 C. J., 922.

We call attention to this controlling language in the case of Galbert v. Olcott: "We are of the opinion that the grantee took under the deed a fee simple title *in trust for the benefit of the Church, whose officer he was."* (23 S. W., 986). We likewise call attention to this statement from the same case: "In the deed before us, the use of word "assigns" in the habendum indicates that it was contemplated that the trustee should have power to sell the lots, *and thus to divert them to a purpose other than that primarily intended."*

The use of the word "assigns" in the deed in the Olcott case has been repeatedly referred to as demonstrative of the fact that what otherwise would have been an express trust, with no power of alienation or diversion of use of title . on the part of the trustee, was enlarged into an unrestricted conveyance. For example, see Long v. City Natl. Bank of Commerce, 256 S. W., 1006, at page 1014; Crawford v. El Paso Land Improvement Company, 201 S. W., 233, at page 237, and particularly McLeod v. McCall, 180 S. W., 293, at page 295.

But a moment's glance at the deed under construction will show the court that by its very terms it precluded any theory or idea of the trustees having the power to convey the property, the habendum clause reading: "Unto the said W. R. Barnes, presiding Justice of the aforesaid, *and his successors in office for the use aforesaid forever."* (Page 1 Op.) Thus, we see that under the construction given the deed by this court, the land was conveyed to the presiding justice of Camp county and successors in office for the express purpose or use as a place for erecting a courthouse and other public buildings. In fine, the presiding justice of Camp county and his successors in office took the controverted property as trustees for the public of Camp county, the condition of the trust being that the property be put to use as a place for the courthouse and other necessary governmental buildings. That this court so construed the instrument is further illustrated by its holding as follows:

"The facts show that the purpose of the grantor, in executing the deed, was for the benefit of all the persons owning taxable property in

Camp County, by relieving them of the necessity of having their property taxed to procure funds with which to buy a location for the courthouse and other necessary buildings to be used by the people of Camp County, at the county seat located at Pittsburg."

We remind that we remain convinced that the conveyance really passed a base or determinable fee, but in arguing this motion for rehearing we adopt for the sake of argument the view of this honorable court that the property really passed to the presiding justice and successors in office in trust. *The trust has failed, what becomes of the title?*

We have suggested to the court a case from the Supreme Court of Texas (Stephens County v. Mid-Kansas Oil & Gas Company), and we now ask examination of the case of Hopkins v. Grimshaw, 165 U. S., 342, where land was conveyed "for a burial ground, and for no other purpose whatever." For the same general principle, see 66 A., L. R. 171. The rule is also stated in Pomeroy's Equity Jurisprudence, vol. 2, 2nd Ed., par. 1032. The practical effect of this resulting trust is to merge the legal and equitable titles into the heirs of the grantor, thus from Re Lilley, 272 Pennsylvania, 143, 28 A. L. R., 366, at page 372. We also refer to the case of Clark v. Campbell, 133 Atl., 166, 45 A. L. R., 1433. Hence, we respectfully submit that under the opinion of this court holding that the term "as a place for erecting the courthouse and other public buildings which may be necessary * * * for the use aforesaid forever" declared a purpose and use, or set out an express trust, the failure of the purpose of the trust causes a resulting trust in favor of the appellants.

For a case directly in point on the question of a resulting trust being created in favor of the heirs of the grantor, when a specified use and purpose for which land was deeded had failed, we refer to Gumbert's Appeals, 110 Penn., 496, 1 Atl., 437, 47 A. L. R., 1180.

Subsequent covenants or conditions can be used to limit or enlarge the grant only where the language is ambiguous; for the grant is denotative of the chief purpose of the deed, to-wit: The extent of the title conferred, and absent ambiguity calls for no rule of construction as to later parts of the instrument.

The extent of the consideration paid or motivating the grantor can not be used to qualify the grant, can not be used to enlarge or restrict the interest granted.

The reversionary clause and warranty clause refer to the title *conferred,* a pure *use;* hence the title warranted and to revert upon the removal of the county seat is plainly limited to the *use* set out.

The kinship between assignments two through four makes it advisable to group them for discussion, which will be done.

The opinion of the court raises to a position of all controlling importance a reversionary clause in the deed, which in providing for the reversion of title, as a fundamental principle necessarily refers to the reversion

of the *title conveyed in the granting clause*. Such opinion states that there is no ambiguity in the language used in the instrument in question, and therefore we must give meaning to each part of the deed and consider the various clauses or parts of the deed in their relative importance. Assuredly it will be conceded that any quantum or degree of title conferred or estate passed, in a granting clause may be the subject of later restrictions, reservations and yea, even reversions. That these latter reservations, restrictions and reversions cannot change an unambiguous description of the title conveyed, is well recognized generally, and particularly in Texas. The premise or granting clause has a single purpose in a deed, to-wit: The definition, setting forth, and imperative statement of the exact estate the grantor has seen fit to confer upon the grantee.

The rule has been very well stated in the negative in Texas, witness the following quotation from Jung et al. v. Petermann, 194 S. W., 202 (W. E. refused):

We have always contended that there is no repugnancy between a dedication of the land in the present case for a certain use, and the later provision of a reversion upon the happening of another contingency, but this honorable court seems to have taken the opposite view, and in its opinion in effect allows the condition subsequent, providing for reversion, to override the limitation of the grant to a use.

However, the rule stated when analyzed is peculiarly applicable to the instrument under construction. Thus, it is generally stated in 47 A. L. R., 869, and 8 R. C. L., 1044, par. 99, as follows:

"Since the granting clause of a deed primarily is intended to define and designate the property and the estate conveyed, while the premises comprise mainly nonessential and introductory matters, and the habendum, though ordinarily used to determine the interest granted, or to lessen, enlarge, explain, or qualify the premises, is not a necessary part of the deed, technically the granting clause, if clear and specific, and in conflict therewith, prevails over the premises or the habendum, although, if the meaning is otherwise doubtful, the recitals may be used as a test to discover the intention, and the habendum to lessen the uses to which the estate may be put or to explain the premises, thereby to determine the estate conveyed."

Again, in the case of Simpson v. Brown (Sup. Ct. of Georgia), 47 A. L. R., 865, at p. 869, it is said: "It is true that the warranty clause can be resorted to in determining the intention of the grantor; but, when the estate granted in the premises and the habendum is ascertainable, *it can not be enlarged or changed by the language of the covenant of warranty.*"

The annotations following this case show that the rule is recognized in a great number of states including Texas, and is sometimes negatively

stated to the effect that neither the habendum clause nor the covenants and conditions can control the premises or granting clause.

*J. A. Ward, J. D. Bass* and *J. A. Guest,* for appellees.

The conveyance by W. H. Pitts to the land in controversy being made upon expressed consideration of $10 paid and the further "consideration that the county seat of Camp county was located in the town of Pittsburg at an election held on the 20th day of June, 1874," in the form of a general warranty deed with the habendum and general warranty, "as a place for erecting the courthouse, and any other public buildings which may be necessary for said Camp county," "for the use aforesaid forever"; and a condition of forfeiture being added to said deed that, "nevertheless, the condition of this conveyance is such that if the county-seat should be hereafter removed to any place in said county, then, and in that case, this obligation shall be null and void, and the property herein conveyed shall revert to the said W. H. Pitts, his heirs or assigns"; and there being no condition of forfeiture based on the failure to maintain the courthouse on the land conveyed; and the said W. H. Pitts, at the time of the said election and the execution of said deed, being the owner of the said election and the execution of said deed, being the owner of considerable town and rural real property, and he having disposed of practically all of his property prior to his death, and the county seat not having been moved to any other place in Camp county, the title vested in Camp county in fee simple, and the court did not err in so holding and rendering judgment for said county for the title and possession thereof. Glen Rose Collegiate Institute v. Glen Rose Independent School District No. 1 et al., 125 S. W., 379; Priests of St. Basil v. Byrne (Texas Com. App.), 255 S. W., 601-3; Maddox v. Adair, 66 S. W., 811 (error denied by Sup Ct.); Stevens v. G. & S. A. Ry. Co. (Texas Com. App.), 212 S. W., 639; Daggett v. City of Ft. Worth, 177 S. W., 222; Brown v. T. & N. O. Ry. Co., 295 S. W., 670 (error dismissed by Sup. Ct.).

The deed should be construed in the light of the conditions and circumstances surrounding the parties, most strongly against the grantor; and if the instrument will bear any reasonable construction that will defeat an implied condition subsequent, at law as in equity, that construction will be given it. Estates upon implied conditions, cannot be created by deed except where the terms of the grant will not admit of any other reasonable construction. Glen Rose Collegiate Institute v. Glen Rose Independent School District No. 1 et al., 125 S. W., 379; Spink v. First Christian Church of Vera, 273 S. W., 815.

The fact that the purpose of the conveyance is mentioned therein, but is omitted from the only clause providing for an absolute forfeiture of the land conveyed is significant, and indicates a desire to prevent the county seat of Camp county from being removed to some other place in

Camp county, and thus prevent W. H. Pitts from losing the benefit of enhanced value by sale of his property; and he having sold practically all of his real estate before he died, he received all the benefits he proposed to secure by conveying the land to Camp county in return for the county seat being located at Pittsburg as recited in the deed. Glen Rose Collegiate Institute v. Glen Rose Independent Sch. Dist. No. 1 et al., 125 S. W., 379.

W. H. Pitts lived in Pittsburg and owned the greater part of the land on which the town was laid out, and considerable rural lands, at the time of the election held to determine the location of the county seat of said county. He having promised before the election that if the people would select Pittsburg as the county seat he would give the land for the courthouse; and Pittsburg having been selected at said election on June 20, 1874, as the county seat; and W. H. Pitts, after the said election of Pittsburg as the county seat, having executed a general warranty deed to the county judge of Camp county in consideration of $10, and that the county seat had been located at Pittsburg at said election; and the only condition of defeasance or forfeiture stated in the deed being the removal of the county seat to some other place; and deed having been accepted by the county which has maintained the county seat at Pittsburg; and Pitts having sold practically all of his land in and near Pittsburg and got the benefits of such sale; the facts are sufficient to show that the principal consideration for the execution of the deed was benefits expected in enhanced value of his lands on account of the selection of Pittsburg as the county seat of Camp county, and the conveyance being an executed conveyance upon valuable consideration, passed the fee simple title in the property to Camp county. Maddox v. Adair, 66 S. W., 811 (error denied); Stephens v. G. H. & S. A. Ry. Co. (Texas Com. App.), 212 S. W., 639; Daggett v. City of Ft. Worth, 177 S. W., 222; Brown v. T. & N. O. Ry. Co., 295 S. W., 670 (error denied); Glen Rose Collegiate Institute v. Glen Rose Independent School Dist. No. 1 et al., 125 S. W., 379.

Where property is conveyed for a valuable consideration received by the grantor in form of a general warranty deed, with description of property immediately following the granting clause, and description then being followed by these words: "as a place for erecting the courthouse, and any other public building which may be necessary for said county of Camp", this is not a dedication and is not a restriction on the grant, and should be construed as an expression evidencing the fulfilment of the promise of W. H. Pitts that if the people would vote for Pittsburg as the county seat of Camp county he would give the lot for the courthouse; and when the evidence shows the grantor expected and had reasonable ground to expect benefits in way of market for his real estate in and near Pittsburg, and that he had realized the benefits of such sales, the convey-

ance is not a dedication but a sale of the fee simple title of the land conveyed.

Parol proof by Eli Reeves that he heard W. H. Pitts say, before the election to locate the county seat, that "he would give a lot in Pittsburg for the courthouse if we would vote for Pittsburg for the county seat", does not contradict the written deed but harmonizes with it and shows the meaning and force that W. H. Pitts intended by the expression "and for the further consideration that the county seat of said county was located in the town of Pittsburg at an election held on the 20th day of June, A. D. 1874."

In construing a deed, all its parts must be given effect according to the intention of the parties, and construed most strongly against the grantor; and in determining the intention of the parties it is proper to look to all the circumstances surrounding the transaction. And when that is done it appears that it was the intention of W. H. Pitts and Camp county, acting by its chief justice, upon consideration of expected benefits to W. H. Pitts to convey the land in fee simple, with the forfeiture of the right to the property if the county seat should be removed to any other place than Pittsburg before said Pitts disposed of his property, after which he would have no further interest in the condition of forfeiture placed in the deed. Smith v. Jones, 192 S. W., 795 (at 799, par. 3-5); Reynolds et al. v. McMan Oil & Gas Co., 11 S. W. (2d) 778 (at par. 3).

Where property is conveyed for a definite certain use upon consideration of expected benefits in market for land which the grantor intends to sell and which he does sell, and where the benefits expected have been realized by a sale of all his property the grantor then has no further interest in the use of the property. Such a conveyance with the granting habendum and warranty clause passes the title and is not a dedication. Glen Rose Collegiate Institute v. Glen Rose Independent School Dist. No. 1 et al., 125 S. W., 379; Maddox v. Adair, 66 S. W., 811 (error denied); Stephens v. G. & S. A. Ry. Co. (Texas Com. App.), 212 S. W., 639; Daggett v. City of Ft. Worth, 177 S. W., 222; Brown v. T. & N. O. Ry. Co., 295 S. W., 670 (error denied).

The deed executed by W. H. Pitts having provided a condition of forfeiture of the right of the county to the land described therein based upon the removal of the county seat from Pittsburg, "county seat", as used in the deed, should be given the meaning given it by our statutes and court decisions. It means the chief town of the county where the county buildings and the courts are located, and the county business transacted. Ordinarily the term "county seat" applies not merely to the lot and buildings used for transacting public business, but to the territory occupied by such town as may be designated as the county seat at the time of its designation, and as used by Pitts in the deed to W. R. Barnes that was the meaning of "county seat". Ralls v. Parish, 149 S. W., 810;

Fowler et al. v. Brown et al., 5 Texas, 407; McClelland v. Shelby Co., 32, Texas, 17; E. G. Sevier v. Peter Teal, 16 Texas, 371; 15 C. J., page 421, sec. 55.

Implied conditions subsequent in a grant, devise, etc., are not the favorites either of the courts of law or equity, but are discouraged by both, as the doctrine is usually invoked for the purpose of securing a forfeiture of the estate. If the instrument will bear any reasonable construction that will defeat the springing of an implied condition subsequent, at law as in equity, that construction will be adopted. Estates upon implied conditions subsequent cannot be created by deed, except where the terms of the grant will not admit of any other reasonable construction. Ryan v. Porter, 61 Texas 106 (at 109); Gabert v. Olcott, 23 S. W., 985 (at 986).

Where property is conveyed on a condition subsequent for a particular use for the purpose of enhancing the value of the grantor's adjoining property, without any provision as to the duration of the condition, it will not be held to continue after the particular use specified ceases to be of any benefit to the adjoining property. And the burden is on the persons seeking a reversion to show abandonment for the uses stipulated. Daggett v. City of Ft Worth, 177 S. W., 222 (par. 4-6); Brown v. Tex. & N O. Ry. Co., 295 S. W., 670 (at 675), error denied.

A dedication is the appropriation or gift by the owner of land, or of an easement therein for the use of the public. The act of donating or giving property for some proper object, and in such manner as to conclude the owner. Oswald v. Grenet, 22 Texas, 94 (100) in point; Menczer v. Poage, 118 S. W., 863; Poindexter v. Schaffuer, 162 S. D., 22; 18 C. J., p. 38, sec. 1, and note 1.

Except in one jurisdiction, a misuser does not constitute abandonment, or cause the land to revert to the dedicator, so long as the use for which the property is dedicated is not rendered impossible thereby, or unless there is a stipulation in the instrument of dedication providing for a forfeiture in case of misuser or diversion. 18 C. J., p. 124, sec. 161, and notes.

The court did not err in receiving the testimony of Eli Reeves that before the election in Camp county to locate the county seat, he heard W. H. Pitts say, if the people would vote for Pittsburg as the county seat he would give the lot for the courthouse; and in receiving in evidence the deeds showing that W. H. Pitts afterwards sold practically all of his real estate holding in and around Pittsburg, for that evidence was offered to show the deed in question was made on a valuable consideration which he had realized before his death. It is well settled law of this state that recitals of consideration contained in a deed is not conclusive, but that parol and other evidence may be introduced even vary, explain, or contradict such recitals and show the true consideration, unless such consid-

eration be promissory, or contractual in character. And such evidence is admissible without a plea of fraud, accident or mistake. Rogers v. Rogers, 7 S. W. (2d) 126 (par. 3).

MR. PRESIDING COMMISSIONER SHORT delivered the opinion of the court.

The following statement and questions comprise the certificate from the Court of Civil Appeals of the Sixth District:

"W. H. Pitts signed, acknowledged and delivered the following deeds:

" 'THE STATE OF TEXAS )
                      ) Know all men by these presents:
CAMP COUNTY.          )

" 'That I, William H. Pitts of the County and State aforesaid, for and in consideration of the sum of Ten Dollars to me in hand paid by W. R. Barnes, presiding justice of the county court of said County, the receipt whereof is hereby acknowledged, before the signing and delivery of these presents, and for the further consideration that the County Seat of said county was located in the town of Pittsburg at an election held on the 20th day of June A. D. 1874, have granted, bargained, sold and conveyed, and do by these presents grant, bargain, sell and convey unto the said W. R. Barnes, presiding Justice as aforesaid, and his successors in office the following described lots or parcels of land lying, situate and being in the town of Pittsburg, in said County, to-wit: Lots Nos. 6, 7, 8, 9 and 10, each 40 feet wide and 110 feet long, bounded on the north by Church Alley, on the south by Jefferson Street, east by lot No. 11, and west by lot No. 5, as a place for erecting the courthouse, and any other public buildings which may be necessary for said County of Camp.

" 'To have and to hold the above described lots together with all and singular the rights and hereditaments and appurtenances to the same in any manner appertaining unto the said W. R. Barnes, presiding justice as aforesaid, and his successors in office, for the use aforesaid forever.

" 'And I do hereby bind myself, my heirs, executors, and administrators and assigns forever to warrant and forever defend the right and title in and to the above described premises to the said W. R. Barnes, presiding justice as aforesaid, and his successors in office against all person whomsoever lawfully claiming or to claim the same or any part thereof.

" 'Nevertheless, the condition of this conveyance is such that if the county seat should be hereafter removed to any place in the said county, then, and in that case, this obligation shall be null and void, and the property herein conveyed shall revert to the said W. H. Pitts, his heirs or assigns.

" 'In testimony whereof I hereunto set my hand and affix my seal, using a scroll for seal. This 1st day of August, A. D. 1874.

                              (Signed)   Wm. H. Pitts.'

"The deed was duly filed for record September 28, 1874.

## II.

"The appellants, who are the heirs of W. H. Pitts, deceased, instituted this suit against Camp County and the City of Pittsburg for the recovery of Lots 6, 7, 8, 9 and 10, which are the lots designated in the above deed. The suit was in the form of trespass to try title and to remove cloud from title. Besides other allegations in the petition, the above mentioned deed was set out and the following averment was made:

" 'Petitioners show that by said instruments the said W. H. Pitts dedicated and intended to dedicate said land to the use of the County of Camp, for the sole, specific use and benefit of said Camp County for the *erection of a courthouse, and other public County buildings and for no other purpose* and intended, as therein expressed, that in the event said County site should be removed to. any other place in said County than said property, that the right to use and occupy said property should cease forever and said property should revert to said W. H. Pitts or his heirs. That *said grant did not pass, was not intended to pass the fee in said* land, but only the use for the specific use as a site for the *courthouse and other County buildings for said County,* and that the effect of said instrument was intended to and was and is, that for the specific use aforesaid alone the County of Camp by and through its proper officers could and did accept the said grant of the said property to be used for a courthouse site, and for the necessary County public buildings, and did erect a Courthouse thereon soon after obtaining said contract of dedication, and for the building for the County Officers, and continued to so use said land and premises until about the first day of February, 1929, when, having obtained other lots and parcels of land therefor, and desiring and intending (to) abandon the site, place and property, it erected and built a new Courthouse with all the offices for all the County Officers of said County;. the said County having removed the seat and site and location of the Courthouse from the said described land, the said County after so building said new Courthouse on another and different tract and parcel of land at another and a different place, discontinued the use of said granted and dedicated tract of land above described, for the purposes for which it was dedicated and accepted, and abandoned the same as to such purposes, and removed all the County Officers, and all County Furniture to the new site, on a different tract and into a new Courthouse thus differently situated.'

"The appellees pleaded, besides other matters, that:

" 'These defendants further allege that at the time of the holding of said election for the location of the county seat for Camp County, Texas, and at the. time of the execution of the foregoing mentioned deed and conveyance to the said W. R. Barnes, the said W. H. Pitts was the owner of practically all of the land on which the City of Pittsburg was then located and on which it is now located; that it was the purpose and inten-

tion of the said W. H. Pitts and the principal moving consideration actuating him in making the said conveyance to locate the county seat of Camp County at Pittsburg and thereby enhance the value of his lands and to make Pittsburg in Camp County the principal town of Camp County for the purpose of profit to himself by making his lands more valuable and creating a demand and market therefor and to maintain and retain the county seat at Pittsburg until and so long as it was necessary to enable him to sell and dispose of his lands and properties in Pittsburg at an enhanced and increased value.

" 'These defendants further allege that the condition of defeasance set out in the said conveyance has not been broken by the said Camp County nor by the said W. R. Barnes nor any of his successors in office, but that the County of Camp has built, with the aid and assistance of the city of Pittsburg, a municipal corporation, which furnished a part of the financial assistance for the erection thereof, a modern two-story brick building for the purpose of furnishing a ladies' rest room for the citizenship of Camp County and a gents' toilet and a grand jury room on the up-stairs floor, and has permitted the city of Pittsburg, in consideration of financial aid from the said city, to use and occupy a part of the said building as a fire station and public building necessary for Camp County and the citizenship of the said county in Pittsburg, and to occupy the same by the fire chief and the fire engines of the said city.

" 'These defendants further allege that the county seat has been maintained at Pittsburg in said county since 1874; that immediately after the deed of conveyance was so executed by W. H. Pitts, Camp County constructed a brick courthouse and jail thereon, at that time a modern courthouse and jail for a county of the size of Camp, and the said county used, occupied and maintained the said courthouse and jail on the property herein in controversy exclusively until the building of the present courthouse, as alleged by plaintiffs, for the full period of more than 54 years, and the said county has never at any time concluded to abandon the said property and has never at any time yielded its possession thereof, but has at all times claimed to own the property in fee simple and now claims the title to the said property in fee simple; that the condition of defeasance stated in said deed was placed there for the purpose of protecting the said W. H. Pitts, in maintaining and causing the county to maintain and continue the county seat at Pittsburg for the enhancement of his property for the general upbuilding of the towns of Pittsburg and for the welfare in a financial way of himself and family, and that by reason thereof and the continued use of the said property for the great length of time and by reason of the disposition of the properties of the said W. H. Pitts and his heirs in the said county the necessity for the condition of defeasance has long past. Pittsburg is now a town of about 1800 or 2,000 inhabitants,

and is more than five times in size any other town or village in the county.'

"Camp County further asked for the removal of cloud from its title.

### III.

"The case was tried before the court without a jury on April 4, 1929, and, upon the written request of the plaintiffs filed during the term, the court made the following findings of fact:

" '1. I find that from a time prior to 1872 up until his death about 1898, W. H. Pitts was a citizen in Camp County, Texas, and in 1874 owned quite a large quantity of land in Pittsburg in Camp County, both in town lots and in country property, a part of which the town of Pittsburg is located on and the balance adjacent thereto, and in addition to that he owned land in the country 2, 3 and 4 miles from Pittsburg.

" '2. I find that W. H. Pitts died about 1898 and left surviving him a son, Dr. T. N. Pitts, and a daughter, Mrs. Ella Flateau, and that Dr. T. N. Pitts died about 1907 and that Mrs. Viola Pitts is the surviving widow of Dr. T. N. Pitts and the other plaintiffs are the heirs of the said Dr. T. N. Pitts other than Mrs. Ella Flateau.

" '3. I find that in April, 1874, Camp County was created by an Act of the Legislature from a part of Upshur County, and the act provided for the holding of an election for county officers and for the location of a county seat for Camp County.

" '4. I find that under the said act creating Camp County there was an election legally held on June 20, 1874, for the election of county and precinct officers and for the location of a county seat, and that at said election three places in Camp County were voted on, viz.: Pittsburg, Leesburg, a point about 6 miles west of Pittsburg, and Center Point, about three or four miles S.E. from Pittsburg, and that as a result of said election 500 votes were cast for Pittsburg as the county seat, 228 votes were cast for Leesburg as the county seat, and 69 votes were cast for Center Point as the county seat of Camp County.

" '5. I find that at the time of said election W. H. Pitts and his family lived and resided in Pittsburg, and that he had 20 or more lots of land upon the street in Pittsburg on which the land in controversy herein is situated, being business lots that had been laid off and a plat made thereof and the lots were 26 feet by 110 feet both on the north side and the south side of the main street, which is called Jefferson Street, running south and adjacent to the land in controversy for two blocks west, and from thence west it is called Quitman Street; that the plat of said town at the time showed a street running east and west south from Jefferson Street called Marshall Street, and a street running E. and W. north of the land in controversy called Church Alley, and that Church Alley at its west extremity intersects the continuation of Jefferson Street, which bends about thirty degrees toward the north.

" '6. I find that during the campaign immediately prior to the election W. H. Pitts made statements that if the county seat was located at Pittsburg he would deed to the county the property on which to locate the courthouse and other county buildings and that his desire was to have the county seat located at Pittsburg with the expectation and belief that his property would be enhanced in value and a better market would be created for his said property and that he would thereby receive a benefit and profit in the sale of his town and adjacent country property.

" '7. I find that there is no record in the County Clerk or County Treasurer's office showing the issuance of any wararnt for the sum of Ten Dollars payable to W. H. Pitts which is referred to in the conveyance above copied, and I do not find whether the Ten Dollars was actually paid to W. H. Pitts or not, but I do find that the principal actuating and moving consideration inducing the said W. H. Pitts to make the said conveyance was the location of the county seat of Camp County at Pittsburg and the maintenance and retention of the county seat at Pittsburg for the purpose of enhancing the value of the property owned by the said W. H. Pitts in the town of Pittsburg and adjacent to the property conveyed in the foregoing deed.

" '8. I find that the proper authorities of Camp County within a reasonable time after the execution and delivery of the foregoing conveyance erected a brick courthouse on the property so conveyed and also a brick jail house, and that the said courthouse and jail house were kept and all the county offices were kept on this property except a grand jury room and a petit jury room from the time of the erection thereof, about 1874 or 1875 until about 1917 or 1918, when the county, on account of the dilapidated condition of the old jail, built a new jail house on property owned by Camp County immediately north of the property in controversy and about 150 feet distant from the old courthouse, and that the old courthouse so built when the property was conveyed to the county has been continuously used by the county officers and all the county business, including the District Court has been conducted in the old courthouse until about February, 1929.

" '9. I find that about 1926 the old courthouse was wholly inadequate for the accommodation of jurors and of the grand jury when district court was in session, and that there was no rest room or toilet in conection with the courthouse, and that Camp County and the City of Pittsburg, a municipal corporation, made an agreement whereby each would pay half the expenses of erecting a modern brick and concrete building two stories high and about 40 feet square; that the ground floor on the west end was used for a ladies' rest room and a gent's toilet, and the east portion of the ground floor was to be used as a place to keep the fire trucks and apparatus by the city of Pittsburg with the consent of the Commissioners' Court of Camp County. The upper story was equipped so

that the east end would be used for the fire chief, who was the person occupying and caring for the fire truck and engine, and that on the west side of said building was a grand jury room properly equipped for the sessions of the grand jury and a petit jury room properly equipped for petit jurors, and that the said building has been continuously used in connection with the old courthouse for county purposes and was a necessary public building for Camp County.

" '10. I further find that the old brick courthouse on the property in litigation has become cracked and was a dangerous building and was wholly inadequate for county purposes, and that it has become necessary that a new courthouse be built for the use of the officers and for court purposes, and that Camp County owned a lot about three hundred feet east and west by 400 feet north and south on which the jail was already located, and that the county commissioners' court, in the exercise of its authority, in the year 1928 began the erection of a modern new courthouse on the said lot about 200 feet north from the old courthouse; that there is a street about 30 feet wide running east and west between the lots in controversy herein and the lot or block on which the new courthouse was erected.

" '11. I find that the new courthouse is equipped with a basement story, a first floor and a second floor and a third floor; that the basement story accommodates the Justice of the Peace and one other office, and that the heating apparatus and fuel compartments are located therein. The first floor contains the County Judge's room and the county court room, the county clerk's office, the sheriff's office, the County Treasurer's office and County Superintendent's office. The second floor is occupied on the east side by the district court room, which is two stories high, occupying the space perpendicularly of the second and third floor, with a balcony at the south end and the Judge's office in the northeast corner in the rear of the Judge's stand, and a room for the jury to retire immediately north from the Judge's stand, and on the west side is the district clerk's office at the northwest corner, and one or two other office rooms and the County Attorney's office.

" 'On the west side of the third floor is a grand jury room fitted for the use of the grand jury and a petit jury dormitory, a place for sleeping quarters and resting and bathing for the petit jurors, and that on the northeast corner of the third floor is a petit jury deliberating room. This new courthouse is equipped with running water and toilets for the accommodation of both white and colored people, and is steam heated.

" '12. I find that the grand jury, either of their own accord or at the request of properly constituted authorities, and whether of their own accord or at the request of others or not I do not find, at the present term of court occupied the grand jury room on the second floor of the new building on the lots in controversy.

" '13. I find that the county seat of Camp County is still located at Pittsburg in Camp County, Texas, where it was located at the election held on June 20, 1874, and that there has never been any effort on the part of any citizen of Camp County to remove the county seat of Camp County to any other place in the county, and that the said lots in controversy had been used, occupied, controlled, and held by the county for more than 54 years.

" '14. I further find that after the completion of the new courthouse in February, 1929, all of the officers of Camp County moved their offices, records and papers in their custody into the new courthouse, and they now are occupying their quarters in the new courthouse except the County Demonstration Agent, and I do not find where his quarters are.

" '15. I find that the location of the county seat in Pittsburg at the election held on June 20, 1874, did enhance the value of the property owned by W. H. Pitts after deeding off to the county the property in controversy herein, and that at the time of his death he had sold and disposed of all of his business property in Pittsburg except about 6 or 7 lots, which are held by the heirs of his son, T. N. Pitts, in the third block west from the property in controversy, being about 600 feet from the old courthouse on the property in controversy, and I find that the only property held and owned by Mrs. Ella Flateau, the surviving daughter of W. H. Pitts, in the county of Pittsburg is located a quarter of a mile or more south of west from the courthouse and is very little improved. I find that all of the heirs of W. H. Pitts and his son, T. N. Pitts, live away from Camp County except Mrs. Viola Pitts, the widow of T. N. Pitts, who lives in Pittsburg something near 600 yards west from the property in controversy and that she holds for life the business lots that were owned by her husband at his death in the third block west from the courthouse and they are small lots and designated on the map as half lots.

" '16. I find that the retaining of the courthouse on the lots of land in controversy herein or a building of the new courthouse on the property north thereof about 200 feet does not in any way affect injuriously or diminish the value or the use of the property owned by the heirs of W. H. Pitts in Pittsburg, and that they have no interest in maintaining the courthouse on the lots of land in controversy herein, and they are seeking to recover herein solely upon the ground of misuser and claiming a forfeiture under the conveyance hereinbefore set out.

" '17. I find that none of the plaintiffs nor any one representing them have ever at any time objected to the building of the jail on the property where the new courthouse is now located, and that it has been on the said property for 12 or more years, and that none of the plaintiffs have ever objected to the erection, use and occupation of the new building on the property in controversy herein that is now being used by the county of Camp for a ladies' rest room and toilet and by the city of Pittsburg as a

fire station, but that the same was permitted to be erected at the expenditure of $14,000.00 and used continuously after its erection without complaint or objection from the plaintiffs, or any of them, or any representative of them.

" '18. I find that in erecting the new courthouse it was the intention of the county to abandon the old courthouse and the property described in the plaintiff's petition for all courthouse and jail purposes, and it in fact has so abandoned the same for the aforesaid purposes. But the building thereon is being used as a public building by the citizens of Camp County as a public rest room and toilet, and is intended to be so used in the future.

## CONCLUSION OF LAW

"I conclude that the conveyance made by W. H. Pitts to W. R. Barnes, Chief Justice of the County Court of Camp County must be given such construction as will give full force and effect to all the parts thereof.

"I further conclude that the said conveyance must be strictly construed most favorably for the grantee and against the grantor.

"I conclude that so construing the said conveyance the intention of the parties viewed from the circumstances surrounding them at the time, and particularly the intention of the grantor, was to convey the property in controversy in Camp County and to place a restrictive clause therein to prevent the county seat of Camp County being removed to some other place than Pittsburg in Camp County in order that he might reap the benefits of enhanced price and the building up of Pittsburg and the sale of his remaining property incident thereto, which was the real consideration for the conveyance.

"I further conclude that by placing the restrictive clause in said conveyance providing that the condition of this conveyance is such that if the county seat should hereafter be removed to any place in said county, then and in that event this obligation shall become null and void and the property herein conveyed shall revert to the said W. H. Pitts, his heirs and assigns, was a restriction on the right of forfeiture in the grantor, and that no forfeiture can take place under any circumstances until this condition subsequent was broken.

"Upon the foregoing facts and conclusions of law I am of opinion that the plaintiff should not recover and the defendants should recover of the plaintiffs all costs in this behalf incurred and expended, and that Camp County having pleaded the facts and prayed for the title and possession of said property and to have the claims of plaintiffs adjudged a cloud upon the county's title and that it be removed, such relief should be granted and was by the judgment of the court granted.

"Such I understand to be the holding in Stevens v. G. H. & S. A. Ry. Co., 212 S. W., 639, and Garrett v. Olcott, 23 S. W., 985."

"The above findings have support in the evidence.

IV.

"The trial court entered judgment (1) denying the plaintiffs a recovery, and (2) decreeing that Camp County, on its cross-action, recover as against plaintiffs the title and possession of the lots in suit, as well as removing the cloud on title by reason of the claim of plaintiffs.

V.

"Question 1. Did Camp County, in the light of the surrounding circumstances and the purposes sought to be obtained by W. H. Pitts, acquire an indefeasible fee simple title to the lots?

"Question 2. Is the deed above set out to be construed as one passing the fee simple title to the property, or as one establishing a dedication merely of the property for the particular uses of a courthouse and other public buildings? If it is a deed as one establishing the dedication merely, then has Camp County relinquished its rights to the lots dedicated by permanent abandonment, as done, of its use for purposes of a site for the county courthouse?

"Question 3. Did the trial court err in holding, as he did, that the title to the property did not revert to the heirs of W. H. Pitts, because in the circumstances shown there had been no violation of the reversionary clause of the deed stating, in effect, that should the county seat ever be removed from Pittsburg the property should revert to the grantor, his heirs or assigns?"

Since the parties in their respective briefs agree that the written instrument quoted in the certificate is not ambiguous, and since we have reached the same conclusion, much of the oral testimony introduced becomes immaterial.

The policy of the law is to render the alienation or transfer of land as free as it is possible to do, where the grantor possesses the legal qualifications to execute such transfer, in the absence of fraud, accident or mistake, and therefore conditions, rendering the transfer inoperative, are not favored by the law.

The trial court found that the $10, named in the instrument as a part of the consideration, was not in fact paid, and so this part of the language, used in the instrument, must be ignored. Where the consideration, moving a grantor to execute a written conveyance of property, is not contractual in its nature, it is permitted to prove the real consideration, the doing of which does not infringe upon the rule that the terms of a valid written instrument cannot be varied by oral testimony. This is especially true, where the oral testimony does not contradict the written instrument, but rather shows what the real consideration is. Lanier v. Faust, 81 Texas, 186, 16 S. W., 994; Taylor v. Merrill, 64 Texas, 494, and authorities there cited.

The language in the instrument "and for the further consideration

that the county seat of said county was located in the town of Pittsburg at an election held on the 20th day of June, A. D. 1874", may be explained by proof of facts elucidating the circumstances pertinent thereto, in existence at the time the instrument was executed.

However, these circumstances must be proven, if at all, by competent testimony and in a way prescribed by legal rules for the introduction of evidence. Testimony tending to establish a remote inference, where there is no logical connection between the principal fact sought to be proved and the deduction to be drawn therefrom, by reason of such testimony, is never admissible.

The oral statement of William H. Pitts, made on some unidentified occasion at some unidentified time, prior to the election on June 20, 1874, to the effect that he would give the land for the courthouse, if the citizens of Camp county would vote for Pittsburg as the county seat, was too remote and indefinite to thrown any light on the meaning of the language quoted, as used by the grantor in said instrument. This is especially true, in the absence of testimony to the effect that this oral statement had been given general publicity and that it probably had influenced a sufficient number of the voters, who otherwise would not have voted in favor of Pittsburg, to do so.

For the same reason testimony that Pitts had made certain conveyances of land located in the town of Pittsburg, and in its vicinity, prior to the election held on June 20, 1874, was inadmissible to furnish an explanation and meaning of the language quoted. Certainly the testimony that Pitts had made certain conveyances of land, located in the town of Pittsburg, and in its vicinity after August 1, 1874, could not throw any light upon what he meant by this language used in this instrument dated on that day, in the absence of testimony tending to show he had in mind the intention to make these conveyances at the time he executed the instrument under discussion.

The circumstances which might be proven must be pertinent to the language sought to be explained, and to the situation of Pitts at the time he used it. What he may have said or done at some remote period, prior to August 1, 1874, or what he may have done at different times thereafter, which had no visible or open connection with what he did on August 1, 1874, even though sufficient to establish an inference, would be too remote, in aid of the effort to give meaning to the language quoted. Jones on Evidence, 3rd par. 137, p. 181; Wigmore on Evidence, vol. 1, p. 255; Greenleaf on Evidence, vol. 1, p. 81 (Lewis Ed.).

It is an almost universal rule of economics that the market value of property is determined by the extent of the demand therefor and the ability to supply that demand, this market value usually being increased or lessened according as the demand and supply is increased or lessened. In the absence of pleading and proof to the contrary it is to be presumed

that on August 1, 1874, the three towns which had contended for the location of the county seat of Camp county had existing therein similar conditions, with reference to the law of supply and demand, for property such as William H. Pitts owned in the town of Pittsburg. It is also a matter of common knowledge that where conditions are presumed to exist, such as did exist in Camp county on that date, the location of the county seat at one of these towns would, under this law of economics, enhance the value of property at the county seat over similar property similarly situated in other towns. So we conclude that the eighth finding of fact by the trial court, to the effect that the principal consideration inducing Pitts to make the conveyance, was the maintenance and retention of the county seat at Pittsburg for the purpose of enhancing the value of property owned by him therein and adjacent thereto, finds ample support in the circumstances existing at the time the conveyance was made, irrespective of the testimony erroneously admitted, which was introduced by the appellees having for its purpose proof of this fact.

There was testimony introduced by both parties which had the tendency to throw light on the meaning of the language which we have quoted, and also upon the situation of Pitts at the time he used it in executing the instrument. This testimony is sufficient to support the following numbered findings of fact by the trial judge, to-wit: 1-3-4-5-8 and 9.

Giving effect to these findings of fact, supported as they are by testimony, this introduction or preface to the written instrument of August 1, 1874, would seem to be justified: "Whereas the undersigned is a citizen of Camp county, Texas, and the owner of considerable real estate located in the town of Pittsburg and its vicinity; and whereas Camp county had been created by an act of the Legislature, which provided for the holding of an election for the location of a county seat for Camp county; whereas said election was held on June 20, 1874, at which three places were candidates for the location for the county seat for Camp county, which resulted in favor of the town of Pittsburg; whereas I am the owner of certain town lots in Pittsburg adjacent to certain other town lots hereinafter described, the latter being in my opinion suitable as a place for erecting a courthouse, and other public buildings which may be necessary to be used by the county of Camp; and whereas I realize that the maintenance and retention of the county seat of Camp county at the town of Pittsburg will have the effect of enhancing the market value of property which I now own or may hereafter own there, so long as the county seat shall be so maintained and retained there; now therefore," following which language is the instrument quoted in the certificate.

It is a well settled rule that in construing a contract, evidenced by a written instrument, the intention of the parties is of primary and controlling importance. Texas Farm Bureau Cotton Association v. Stovall,

113 Texas, 273, 253 S. W., 1101; 23 R. C. L., p. 1216, par. 34. Where the contract is unambiguous, this intention must be determined from the instrument itself, considering all its parts and their proper relation to each other. This rule, under the uniform authorities, is not violated by the other well settled rule that when the whole consideration is not stated, or the meaning of the language expressing the consideration is not clear, or where the circumstances surrounding the grantor at the time he used language expressing the consideration is not shown by the instrument, parol evidence is admitted to explain the meaning of the language used, with reference to the consideration. Taylor v. Merrill, supra, and authorities therein cited.

When all the language used by William H. Pitts, in the instrument he executed on August 1, 1874, is given effect by the preface which we have constructed from the findings of fact, it does not vary the meaning of the language used in the instrument actually executed.

The phrase "county seat" is used twice in this instrument, the first time being in the granting clause, and the second time in expressing the condition which the grantor imposed upon the grantee, and his sucessors in office, in order to render continuously valid and effective, his act in doing what he did, as evidenced by his written instrument. This phrase had a definite meaning at the time it was used, and this meaning, of this phrase, as used in this instrument, may be amplified by the circumstances surrounding the parties at the time of its use, though, of course, the meaning could not be varied. It is a cardinal principle of law, as well as statutory in this state, that words are given their usual and ordinary meaning. "Seat" and "site", when used by prefixing the word "county", mean the same thing. The county site is "the place where the county business is transacted, the courthouse located and the superior court held." 15 C. J., 675. The phrase "county seat" is defined by the Century Dictionary to be "the seat of government of a county; the *town* (italics ours) in which the county and other courts are held, and where the county officers perform their functions." This term in re Allison, 13 Colo., 525, 22 Pac., 820, 821, 10 L. R. A., 790, 16 Am. St. Rep., 224, is thus defined: "The term 'county seat' in common parlance, as applied to a particular town or city, simply designates the *town or city* (italics ours) where the seat of the county government ·is for the time being." In Marengo County v. Matkin, 134 Ala., 275, 32 So., 669, 670, it is said: "ordinarily the term 'county seat' applies not merely to the lot and building used for transacting public business, *but to the territory occupied by such town as may be designated as the county seat.* (Italics ours). A county seat is not necessarily co-extensive with the town of its location. It is not identical with the municipality, and does not move by force of the latter's expansion. Thus, where an act of the Legislature selects a certain town as county seat, the board of county commissioners had no

authority to move the county courthouse to a portion of the town not embraced within its limits when the act was passed, notwithstanding that act of adding territory to the town was passed after the locating act, and that the actual establishment of the courthouse occurred after the enlargement of the town." In 15 C. J., p. 421, sec. 55, it is declared that the term "county seat", is meant in its ordinary use, the *town* (italics ours) where the courthouse is required to be established, and where the public records are to be kept, and where the courts hold their sessions, and where the public officers are required to reside or keep their offices. So we conclude that by the phrase "county seat" as used in this instrument, is meant the *territory which comprised at the time the town of Pittsburg, which town, being then unincorporated, meant the inhabited territory, and not any particular part of said territory.*

Having reached these conclusions, with reference to these phrases used in this instrument, which we have discussed, and keeping in mind the rule of law that, in construing a written instrument every material word used therein must, if possible, be given effect, in arriving at the intention of the grantor, it now becomes necessary to construe that part of the granting clause, following the description of the lots, used in the instrument, which is as follows: "As a place for erecting the courthouse, and any other public buildings which may be necessary for said county of Camp."

The Supreme Court of this state, speaking through Judge Gaines, in Olcott v. Galbert, 86 Texas, 121, 23 S. W., 985-986, said: "Yet the rule is well recognized that the mere declaration of the uses to which the granted premises are to be applied do not ordinarily import a condition. When the declared purpose for which the property shall be used is a matter that will enure to the special benefit of the grantor, the courts are more inclined to treat the conveyance as conditional, than when * * * the use is for the benefit of a special class of persons or of the public at large." It is true, in that case, unlike the facts in this case, the instrument construed did not contain any language expressly stating that the grant was made upon any condition. In this case we are not put to the necessity of arriving at the intention of the grantor by applying the ordinary rules of construction of written instruments, since the grantor has expressly stated the condition upon which the grant was made, as well as the circumstances under which it was made. The facts show, without dispute, that the county seat of Pittsburg has not been removed outside of the limits of Pittsburg, as it existed at the time the deed was executed. The location of the present courthouse of Camp county is just across the street from the former location of said building, the two buildings being about 200 feet apart.

As said in Glen Rose Collegiate Institute v. Glen Rose Independent School District, 58 Texas Civ. App., 435, 125 S. W., 379, 382, where

the instrument under construction contains only two expressed conditions of an absolute defeasance or forfeiture of the estate conveyed, both of which conditions had been complied with, prior to the subsequent abandonment by the grantee of the premises, "the fact that the provision to perpetually maintain the institution was inserted in the clause and generally mentioned in the deed, as among the purposes of its execution, but was omitted from the only clause providing for an absolute forfeiture of the land granted, is significant". So in this case, we have stated in the instrument, in unambiguous terms, the only condition attached to the title of the grantee, and his successors in office, the happening of which should defeat that title. This is especially true in view of the general rule that, with certain exceptions not here involved, the instrument to be construed must be construed most strongly against the grantor, and forfeiture of an estate are not favored, as well as where, as in this case, the facts show that the purpose of the grantor, in executing the deed, was for the benefit of all the persons owning taxable property in Camp county, by relieving them of the necessity of having their property taxed to procure funds with which to buy a location for the courthouse and other necessary buildings to be used by the people of Camp county, at the county seat located at Pittsburg.

The law will not imply an intention upon the part of the grantor to impose upon the grantee and his successors in office, any greater condition to be attached to the estate conveyed, or any other condition, than the one expressly stated, under the rule of *Expressio unius est exclusio altrius* (—the expression of one thing is the exclusion of another). Here William H. Pitts in so many words declared, in effect, that the instrument he executed was to be valid and effective so long as the county seat of Camp county should remain within the territory of that town, as it was then situated, but that upon its removal from that territory the property should revert to him and his heirs or assigns.

What we have said in the discussion of the language in the instrument last quoted is equally applicable to the last phrase in the habendum clause, which language is: "For the use aforesaid forever," since this language has direct reference to the language quoted in the granting clause of the instrument. It appears from other findings of fact by the trial court, that the grantee and his successors in office did accept the benefits of this instrument, by erecting within a reasonable time after its execution and delivery, a substantial courthouse on the property conveyed, as well as other public buildings apparently necessary for the use of the county, and had maintained said buildings for such use continuously for more than 50 years, when the location was abandoned, as a place for said public buildings, by reason of the facts found, and not controverted, that these buildings had become decayed, obsolete and insufficient to meet the demands of Camp county, and that at the end of which time the specified

use of these buildings had been abandoned, without their having occurred that condition of affairs which would have justified the appellants to have demanded a restitution of the lots conveyed to them, as the heirs of William H. Pitts. In the absence of proof that the county seat of Camp county had been removed beyond the territorial limits of the town of Pittsburg, as it existed on August 1, 1874, the appellants in this case have no cause of action against Camp county and so long as the county seat of Camp county remains located within said territorial limits Camp county is entitled to the unrestricted possession of the property involved in this case.

We therefore recommend that Question No. 1 be answered "No"; that Question No. 3 be answered "No". These answers render unnecessary and answer to Question No. 2.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

C. M. Cureton, Chief Justice.