JACKSON COUNTY HISTORICAL SOCIETY, et al. *v.*
BOARD OF SUPERVISORS.

Apr. 28, 1952.

No. 38383 (58 So. (2d) 379.)

**Ebb J. Ford,** for appellants.

**Heidelberg & Watts,** for appellee.

**McGehee, C. J.**

The appeal here is from a final decree whereby this suit for injunctive relief was dismissed after a demurrer filed by the appellee to an amended bill of com-

plaint had been sustained. The bill alleged that the complainant, Jackson County Historical Society, a non-profit organization, incorporated under the provisions of chapter 4, title 21, Section 5310, Code of 1942, is entitled under its charter to own, lease, furnish, and manage in the county an historical building or buildings for the dissemination of information concerning historical events, etc., and is therefore interested in the matter hereinafter stated; and that the other complainants are citizens and taxpayers of the county and authorized by law to bring the suit to prevent the sale of the site of the old courthouse property in the City of Pascagoula in said county, following the recent construction of a new courthouse, at the cost of approximately one million dollars, diagonally across the street from the site of the old courthouse, on the ground (1) that no election had been held for the removal of the county seat as provided in Section 259, Constitution of 1890, and (2) on the ground that the sale of the old courthouse site and building at this time would mean a sacrifice of such property to such an extent as to amount to a donation to the purchaser thereof in violation of Section 95 of the Constitution.

Section 259, Constitution of 1890, reads as follows:
"No county seat shall be removed unless such removal be authorized by two-thirds of the electors of the county voting therefor; but when the proposed removal shall be toward the center of the county, it may be made when a majority of the electors participating in the election shall vote therefor."

In 20 C. J. S., Counties, B. County Seat, Sec. 53, page 808, we find: ██ █ "A 'county seat' is the town or city where the seat of a county government is located, where the county court and other courts are held, and where the county officers perform their duties and functions. While the county seat has been said to be the building where a court of record is held, ordinarily the term applies not merely to the lot and buildings used

for transacting public business, but to the territory occupied by such town as may be designated a county seat.'' In support of this text, the following cases are cited: Smith v. Roberts, 60 Misc. 427, 113 N. Y. S. 672; McGregor v. Cain, 177 Ark. 474, 7 S. W. (2d) 13; County Seats, 16 Pa. Co. 440; Pitts v. Camp County, 120 Tex. 558, 39 S. W. (2d) 608; 15 C. J. p. 421, note 26, p. 422, note 29; 20 C. J. S., Counties, Sec. 53; In re Allison, 13 Colo. 525, 22 P. 820, 10 L. R. A. 790, 16 Am. St. Rep. 224.

In 14 Am. Jur., Sec. 16, County Seats, p. 194, we find: ''A county seat is the principal town or city of the county so far as the conduct of the official business of the county is concerned. It is the place where the business of the county is transacted. * * * ''

In his able treatise on Mississippi Constitutions, Judge George H. Ethridge, who was a member of this Court for more than two decades, in discussing Section 259 of the Constitution, at page 449 of the text, said:

''The purpose of this section is to keep a county seat where it is located and prevent undue agitation of removal questions unless the demand is well warranted by the desires of a large portion of the voters of the county. At the county seat are situated the public offices, the court house and the jail and sometimes other public buildings. It costs a good deal of money to build suitable buildings for these purposes, and when they are once located they ought not to be removed for the mere accommodation of ambitious towns and cities. It was thought that it would be well to require more than a mere majority of the votes to authorize such removal in the interest of public peace and to save agitation and expense. It often happens that a majority of the voters of a county are situated on one side of the center of the county, and sometimes they are located in a city near one side of the county. If in such case the removal could be authorized by a mere majority it would result in the

county seat being placed at great distance to the people who have business at the county seat, and would increase the expense of holding courts by having long mileage for jurors and witnesses. The section recognizes the desirability of having the courthouse near the center of the county. It therefore provided when the removal shall be towards the center of the county that a mere majority will control the election and settle the election in favor of removal if the majority favors such removal. * * *''

We therefore think that the bill of complaint fails to state a cause of action on the basis of the first contention stated in the first paragraph of this opinion, for the reason that the location and construction of the new courthouse in the same municipality did not amount to a removal of the county seat from one part of the county to a different locality therein within the contemplation of said Section 259 of the Constitution such as to require an election for that purpose; that ''county seat'' within the meaning of this constitutional provision has reference to removing the seat of the county government from one geographical location to another in the county, and that this provision is not therefore applicable to prevent a change of the site of a courthouse from one place in a municipality to another nearby location therein, since that would not change the geographical location of the seat of the county government, when the county is considered as a whole; and that to hold otherwise would mean that if a courthouse is destroyed by fire, tornado, or other casualty, it could not be rebuilt on the same courthouse square except in the same location thereon where it may have formerly stood.

Moreover, we think that this constitutional provision shows by its very terms that in permitting a removal of the county seat toward the center of the county by a vote of a majority of the actors participating in the election, and in requiring the removal to be authorized by not less than two-thirds of the electors of the county

when a county seat is to be removed elsewhere than nearer the center of the county, the framers of the Constitution had in mind a change in the geographical location of the county seat from one part of the county to another rather than a change in the site of the courthouse from one place to another in the same municipality which has theretofore been, and continues to be, the seat of the county government. Section 3052, Code of 1942, defines the boundaries of Jackson County, and fixes Pascagoula as the county site. The action complained of does not remove it therefrom.

As to the second ground upon which the complainants are seeking injunctive relief, the original bill of complaint discloses that the same was filed one day before the sale of the old courthouse property was to have been made on August 8, 1951, pursuant to a published notice by the board of supervisors in that behalf wherein the board reserved the right to reject any and all bids. It is presumed that the board would not have accepted a bid made at the sale if the same had represented such a grossly inadequate price as to amount to a donation of the property to the purchaser in violation of Section 95 of the Constitution. The injunction sought by the complainants and the lis pendens notice given in connection with the filing of the bill of complaint resulted in no sale being made at the time proposed. And, if the sale had been made for a grossly inadequate price in violation of the constitutional provision in question, then a suit by one or more taxpayers, inviting all other taxpayers to join therein, may have challenged the validity of the sale on the ground of its alleged violation of the Constitution. At any rate, we are of the opinion that the bill of complaint was not maintainable on the ground under the facts and circumstances set forth therein, since the board of supervisors has the authority to dispose of surplus property not needed for county purposes, and as hereinbefore stated, we must assume that the supervisors will not sell the property

at such a grossly inadequate price as to violate the Constitution, but, on the contrary, it must be assumed that they would endeavor in good faith to get the best price obtainable therefor.

From the foregoing view, it follows that the decree of the trial court herein appealed from should be affirmed.

Affirmed.

**Hall, Kyle, Holmes,** and **Ethridge, JJ.,** concur.