STEWART et al. v. BLAIN et al.

(Court of Civil Appeals of Texas. Galveston. June 7, 1913. Rehearing Denied Oct. 9, 1913.)

1. DEEDS (§ 134*)—CONSTRUCTION—"CONDITIONAL LIMITATION" — CONDITION SUBSEQUENT.

Where a grantor conveyed land to a county judge for a schoolhouse for colored children, the deed providing that in the event of the removal of the schoolhouse therefrom the land should revert to the grantor, his heirs or assigns, and the deed should become inoperative, such provision was a conditional limitation, and not a condition subsequent, so that on the property ceasing to be used for colored school purposes the title reverted to the grantor or his heirs.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 448, 449; Dec. Dig. § 134.*

For other definitions, see Words and Phrases, vol. 2, pp. 1407, 1408.]

2. DEEDS (§ 166*)—CONDITIONAL LIMITATION — JUDGMENT — SUBSEQUENT DEED BY ADVERSE CLAIMANT—EFFECT.

B. conveyed a portion of a tract of land to the county judge for a colored school, subject to a conditional limitation that the land should revert to his heirs or assigns in case the county ceased to use the property for such purposes. Thereafter a judgment was rendered against B. in favor of an adverse claimant of the entire tract, after which, in order to settle the litigation, such claimant executed a deed of the land to B., in which she ratified and confirmed the deed of B. to the county. Held, that such deed by the adverse claimant did not destroy the conditional reversion in B.'s deed to the county, but left it in full force.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 522–525; Dec. Dig. § 166.*]

3. DEEDS (§ 160*)—CONSTRUCTION—CONDITIONAL LIMITATION—REVERSION.

Where a deed conveying land to a county judge for a colored school provided that in case of the removal of the schoolhouse therefrom by the county judge or his successors, the land should revert to the grantor, his heirs or assigns, a subsequent sale of the property by the county, and the abandonment of the land for school purposes, amounted to a removal of the schoolhouse therefrom within the limitation, so as to authorize the enforcement of the reversion, though the schoolhouse in fact remained on the land.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 505–517; Dec. Dig. § 160.*]

4. SCHOOLS AND SCHOOL DISTRICTS (§§ 48, 82*)—COUNTIES (§§ 59, 124*)—LIABILITY ON COVENANTS IN DEED.

Where county officers executed a warranty deed of property conveyed to the county for school purposes and warranted the title in their official capacity, they were not liable personally for breach of the warranty, nor did the warranty impose any liability on the county or school district in the absence of proof that the officers were authorized to bind either thereby.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 100–111, 160, 197, 198; Dec. Dig. §§ 48, 82;* Counties, Cent. Dig. §§ 83, 84, 185; Dec. Dig. §§ 59, 124.*]

Appeal from District Court, Jefferson County; W. H. Pope, Judge.

Trespass to try title by W. R. Blain, in which Henry Lee and others intervened claiming the land, against Jesse R. Stewart and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Chas. D. Smith and Morris M. Mothner, both of Beaumont, for appellants. Blain & Howth and M. G. Adams, all of Beaumont, for appellees.

REESE, J. This is an action in trespass to try title by W. R. Blain against Jesse R. Stewart to recover one acre of land. Stewart pleaded not guilty and the statute of limitations of three, five, and ten years. He further alleged that he had bought the land from the county judge and commissioners of Jefferson county and the school trustees of school district No. 6, who had warranted the title, and he asked that they be made parties, and that if judgment be rendered against him he recover of his said warrantors the price paid, $450. These parties came in and answered, admitting the sale, conveyance, and warranty as alleged. Henry Lee and his wife, Ollie Lee, and C. H. Ainsworth intervened, claiming title to the land. A trial without a jury resulted in a judgment for the interveners, from which the defendant Stewart appeals. Pending the trial W. R. Blain conveyed his right, title, and interest to the interveners.

The case was tried upon an agreed statement of facts, which is incorporated in the record and is as follows:

"First. On the 21st day of October, 1876, Thomas G. Watson and his wife, by deed in Volume 'R,' p. 408, deed records of Jefferson county, conveyed to Zelian Blanchette a tract of 40 acres, more or less, out of the J. W. Bullock survey in Jefferson county, described by field notes as follows: 'Beginning 3,450 varas from the northeast corner of the J. W. Bullock league, a stake for corner; thence south 350 varas, a stake for corner; thence west 730 varas, a stake for third corner; thence north 350 varas, a stake for the fourth corner; thence east to place of beginning.'

"Second. On the 15th day of August, 1885, by deed duly recorded on that day in Volume 'X,' p. 450, of the deed records of Jefferson county, Zelian Blanchette and wife conveyed to the county judge of Jefferson county, and his successors in office, one acre out of the 40-acre tract above referred to, which is the land here in controversy, which deed is as follows, to wit:

"'The State of Texas, County of Jefferson.

"'Be it known that I, Zelian Blanchette, of the above state and county, for and in consideration of the sum of one dollar to me in hand paid by the county judge of said county, J. F. Pipkin, have bargained, sold and

conveyed and do hereby bargain, sell and convey to the county judge as aforesaid, and his successors in office, for the purpose of erecting a schoolhouse, for the benefit of the colored school community No. 4, one acre of land bounded and described as follows: Out of the J. W. Bullock league, and the southeast corner of my tract, bought by me from Thos. Watson and beginning at the southeast corner as aforesaid; thence north 75 varas; thence west 75 varas; thence south 75 varas; thence east 75 varas to the place of beginning. To have and to hold unto the said J. J. Pipkin, county judge of Jefferson county, and his successors in office forever, hereby warranting and defending the title to same from any claim or demand whatsoever, it being expressly understood that in event of the removal of the schoolhouse therefrom by said county judge and his successors in office the said acre of land shall revert back to me or my heirs or assigns, and this deed shall become thereafter void and inoperative. Witness my hand at Beaumont, this 15th day of August, A. D. 1885.

his<br>
" 'Zelian X Blanchette.<br>
mark

" 'Witnesses: J. Bordage. W. Pipkin.

" 'The State of Texas, County of Jefferson.

" 'Sworn to before L. L. Miller, clerk of the county court of Jefferson county, by I. Bordage, Deputy. [Seal.]'

"Third. On the ——— day of ———, 18—, Maggie Polk, joined by her husband, L. B. Polk, brought suit in the district court of Jefferson county, which suit was styled Maggie Polk et al. v. Jeff Chaison et al. and numbered 1,015, and the 40, more or less, acres of land conveyed to Zelian Blanchette in 1876 by Thomas G. Watson and wife, as shown above, were involved in said suit, and said Maggie Polk on the 6th day of June, 1889, recovered judgment in said suit against Blanchette for the entire tract. Said judgment, as it affected said tract of land, was to this tenor and effect: Blanchette having pleaded improvement in good faith, both the land and improvements were separately valued, and the plaintiffs, Mrs. Polk et al., were given one year from the date of judgment to pay to Blanchette the amount assessed as the value of his improvements; if Mrs. Polk et al. failed to pay said amount within the time specified, then Blanchette had six months after the expiration of said time in which to pay to Mrs. Polk et al. the amount assessed as the value of the land and take title to same. The judgment was settled between the parties by the execution of the following deed:

" 'The State of Texas, County of Jefferson.

" 'Know all men by these presents that we, Mrs. Maggie Polk (sole heir at law of Matthew S. Miller, deceased) and her husband, L. B. Polk, by their legally authorized agent and attorney in fact, E. A. Blount, all resident of the county of San Augustine, in the state aforesaid, for and in consideration of the sum of one hundred and twenty-nine ($129.00) dollars to us paid and secured to be paid by Zelian Blanchette (sometimes called Azalia Blanchette) as follows: Fifty dollars in cash, the receipt whereof is hereby acknowledged, and the balance as evidenced by his three promissory notes by him executed to us, payable to our order for three equal amounts of $26.33⅓ (twenty-six and 33⅓/100 dollars) with interest on each at rate of ten per cent. per annum from date until paid and due and payable, viz.: The first due the 18th day of June, 1890, but may be paid on or before the 18th day of June, A. D. 1891, with vendor's lien, etc., recited therein; have granted, sold and conveyed and by these presents do grant, sell and convey unto the said Zelian Blanchette of the county of Jefferson and state of Texas all that certain piece, parcel or tract of land in said last named county and state, being a part of the north half of the James W. Bullock league, and being the same tract of land of about 45¼ acres, more or less, mentioned and called the land of Zelian or Azalia Blanchette in the decree of the district court of said county at its spring term 1889 in case of Maggie Polk et al. v. Jeff Chaison et al., and being all of said 45¼ acres less than, and except the 12 (twelve) acres by us this day deeded and conveyed by consent of said Blanchette to Albert Andrus, and less the one acre more or less of land heretofore conveyed by said Blanchette to the county judge of Jefferson county for school purposes, which conveyance we hereby ratify and confirm and for which acre of land he does not pay and we, the undersigned Zelian Blanchette and his wife, accepting this deed with the deed to Albert Andrus as a full final and conclusive adjustment of all matters left unsettled by said decree, do hereby release and relinquish all our rights and privileges to purchase or take said land or only part thereof at the appraised and decreed value thereof, as stipulated and provided for therein. To have and to hold the above described premises, together with all and singular, the rights and appurtenances thereto in anywise belonging unto the said Zelian Blanchette and his heirs and assigns forever, and we do hereby bind ourselves and our heirs, executors and administrators, to warrant and forever defend all and singular the said premises unto the said Zelian Blanchette and his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof. But it is expressly agreed and stipulated that the vendor's lien is retained against the above described property, premises and improvements until the above described notes and all interest thereon are fully paid according to their face and tenor, effect and reading, when this deed shall be-

come absolute. Witness our hands this 18th day of December, A. D. 1889.

"'Maggie Polk,
"'L. B. Polk,
"'By Their Agent and Attorney,
"'E. A. Blount.

his

"'[Signed]　Zelian X Blanchette.

mark

"'Witnesses to Zelian's signature: G. W. O'Brien. J. B. Langham, Jr.'

"Fourth. Neither the county judge, Jefferson county, nor the school trustees, were parties to the suit above referred to, wherein said judgment was recovered by Maggie Polk et al.

"Fifth. The county, through its proper officers, immediately took possession under the deed from Blanchette of the one acre conveyed to it by him on the 15th day of August, 1885, and duly recorded the deed and from that date continuously and uninterruptedly, peaceably occupied, used, and enjoyed the same (for school purposes) until the 9th day of August, 1910, when it was conveyed to the defendant herein for a consideration of $450, which said fund was by the school authorities, under direction of the proper county authorities, immediately reinvested in other school property for the use and benefit of the colored population for whose benefit the school has always been maintained thereon.

"Sixth. It is agreed that the deed from the county and school authorities to the defendant Stewart was regular in every particular.

"Seventh. The said one acre in controversy has not been used for school purposes since it was conveyed to the defendant on August 9, 1910, but the schoolhouse still remains thereon.

"Eighth. It is further agreed that the said Zelian Blanchette and his wife are both dead, and that they left surviving them the following children: A daughter named ———, who married Henry Lee and who is now dead, without issue; another daughter, Ollie Gainer, who is now the wife of the said Henry Lee, and a son, Sidney Blanchette.

"Ninth. The said Sidney Blanchette conveyed all of his interest in the land in controversy to C. H. Ainsworth, by deed dated ——— day of ———, 19—, and recorded in Volume 108, p. 439, of the deed records of Jefferson county, Tex.

"Tenth. It is further agreed that the said L. B. Polk is now deceased and that Maggie Polk, acting by and through her attorney in fact, E. A. Blount, conveyed the land in controversy to the plaintiff, W. R. Blain, by quitclaim deed dated 25th day of October, 1910, which is recorded in Volume ———, p. ———, of the deed records of Jefferson county, Tex.

"Eleventh. At the time of the conveyance from Zelian Blanchette to the county judge of the land in controversy, Maggie Polk was a married woman, and her husband, L. B. Polk, was still living on the day upon which the act removing the disabilities of married women went into effect.

"It is agreed that since the institution of this suit the plaintiff, W. R. Blain, has conveyed whatever interest he acquired in the land in controversy from Maggie Polk to the interveners, Ollie Lee and C. H. Ainsworth."

Upon these facts the trial court concluded that upon the abandonment of the property as school property, and sale thereof by the county authorities, the title and right of possession reverted to the heirs and assigns of Zelian Blanchette, the interveners.

[1] Most of appellant's brief is devoted to a discussion of the question, presented by his first assignment of error, involving the distinction between a conditional limitation and a condition subsequent. Appellant's contention is that the provision for reversion in the deed of Zelian Blanchette to the county judge is a condition subsequent, and not a conditional limitation, and (1) did not survive to the grantor's heirs, (2) was not capable of conveyance to a stranger (Ainsworth), and (3) could not be asserted without re-entry. We are inclined to hold that, even under the fine spun theorizing with regard to the largely fanciful distinction between a condition subsequent and a conditional limitation, the provision in question in the deed is a conditional limitation. Templeman v. Gibbs, 86 Tex. 362, 24 S. W. 792; Green v. Gresham, 21 Tex. Civ. App. 601, 53 S. W. 382; Stearns v. Godfrey, 16 Me. 158; Williams v. Jones, 166 N. Y. 522, 60 N. E. 240; Church, etc., v. Grant, 3 Gray (Mass.) 142, 63 Am. Dec. 725. The sense and evident intention of it was that the grantees were to own and possess the property as long as it was used for school purposes. But we do not find it necessary to follow appellant in what is so learnedly discussed in his brief with regard to this distinction. Neither of the parties to the deed had in mind any such distinction. They came to an agreement about the matter and endeavored to express their meaning by the language of the deed. The property was a gift or donation from Blanchette, and he had a right to make what conditions and limitations he chose. The property is conveyed to the county judge "for the purpose of erecting a schoolhouse for the benefit of colored school community No. 4, * * * it being expressly understood that in the event of the removal of the schoolhouse therefrom by said county judge and his successors in office or the school trustees, or their successors in office, the said acre of land shall revert back to me or my heirs or assigns, and this deed shall become thereafter void and inoperative." It seems to us that this language expresses the intention of the parties in terms so plain that the court would not be authorized to resort to any recondite distinction between a conditional limitation and a condi-

tion subsequent, or technical definition of these terms, in order to arrive at such intention, nor to make use of such to thwart such expressed intention. It seems to us that these provisions mean, and were intended to mean, that the grantees should own and use and enjoy the property so long as it was so used for the purpose for which it was conveyed, and that when this condition ceased the title and right of possession should at once revert to the grantor, "or his heirs or assigns." What other effect could follow from the provision that the deed, upon such contingency, should "become thereafter void and inoperative"; that is, should become as though it had never been executed? The grantees have title only by virtue of the deed. What becomes of their title when the deed by its own terms becomes "void and inoperative"? This contingency is carefully provided for in the deed. It shall "revert back to me, or my heirs or assigns." From this view the title did revert to Mrs. Lee and Sidney Blanchette, and thereafter by his deed Sidney Blanchette's interest passed to C. H. Ainsworth.

[2] As to the effect of the judgment in favor of Mrs. Polk and the subsequent contract and agreement between her and Blanchette, whereby, for a valuable consideration, Mrs. Polk "ratified and confirmed" the deed of Blanchette to the county judge, which deed or contract between Blanchette and Mrs. Polk is set out in full, we are of the opinion that the effect of such confirmation was to leave the title of the grantee in Blanchette's deed just where it would have been if Mrs. Polk had never asserted her title to the land. It takes the one acre out of the operation of the judgment, in substance and effect, and leaves the title of the grantee to rest on Blanchette's deed, reinforced by Mrs. Polk's confirmation. It is contended by appellant that this destroyed the conditional reversion provided for in the deed. The defendant Blain, who had a quitclaim from Mrs. Polk, contends that it passed to her; the interveners contend and the court concluded that it did not affect this conditional reversion at all, but left it as it was. We think this latter view correct.

[3] There was no question of limitation in the case. If the condition for reversion was destroyed by Mrs. Polk's judgment and deed to Blanchette, neither the plaintiff nor interveners have any title. If it was not, then the cause of action asserted by appellees, or either of them, did not arise until the removal of the schoolhouse, which was immediately followed by the sale of the property to the defendant Stewart which was in 1910. This sale and the abandonment of the land for school purposes was to all intents and purposes "a removal of the schoolhouse therefrom." The building may be there yet, but it is not a schoolhouse.

[4] It is assigned as error that the court failed to render judgment against the county judge, the members of the commissioners' court, and the trustees of the school district on their warranty of title. The only evidence on this point in the agreed statement is that the land "was conveyed to the defendant herein for a consideration of $450." It was alleged in the petition that the persons impleaded as warrantors had executed a deed to the appellant in which they had "officially" warranted the title, and these parties, in their answer, admitted that they had executed the deed and warranted the title as so alleged; that is, they admitted that they had in their official capacity warranted the title. This did not impose upon them any personal liability. They were agents, the county judge and the commissioners of the county, and the school trustees of the school district. Did this official warranty impose any liability upon the county and the school district? It is not shown by this admission in their answer that they were authorized to so bind either the county or the school district. Under this showing the court did not err in refusing to render judgment, either against these parties individually, or the municipal bodies which they officially represented.

We have carefully examined the several assignments of error and the propositions thereunder. Our conclusion is that none of them presents any grounds for reversal of the judgment. They are severally overruled. The judgment is, we think, correct, and is affirmed.

Affirmed.