

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXXXXN
ATTORNEY GENERAL

Honorable L. W. Pollard
County Attorney
Kerr County
Kerrville, Texas

Dear Sir:

Opinion Number 0-4939

Re: Whether school district may remove
building from land deeded to dis-
trict for school purposes after
abandonment thereof and reversion
to original grantor.

We have received your letters of October 19 and 26,
1942, relative to the above captioned subject. You enclosed
therewith a copy of a letter written by you to the President
of the Board of Trustees of the Harper Independent School Dis-
trict. We quote the following from that letter:

"As requested by you, I have checked into the
following proposition. Some few years ago a
tract of land was deeded to the Common School
District in the Harper area, which has been taken
in and is now a part of the Harper Independent
School District. This deed has a reversionary
clause in it as to the effect that in the event
the property so conveyed was not used for school
purposes the title thereto would revert to the
original grantors. After that, the property was
voted into the Harper Independent School District
by the members in the Common School District and
is now a part of the Harper Independent School
District which takes in a part of Gillespie and
Kerr Counties. The property in question being
situated in Kerr County, Texas.

"As I understand, the property as originally
deeded, was without any improvements but that
improvements for use were placed thereon by the
Common School District before the question of
abandonment occurred, and the property is not now
being directly used for school purposes, although
you are storing some equipment in the building,
but no active use has been made of the building
for the past several years by the Independent
School District.

"The proposition you have submitted to me was
whether or not the Independent School District
had a right to remove a building erected thereon
by the Common School District.  It is my opinion,
although I have found no authorities on this ques-
tion, that the District would have a right to re-
move such improvements which were placed thereon
by the Common School District prior to the abandon-
ment thereof for school purposes.  Therefore, the
sole question to be determined in this case, aside
from the one mentioned above, is whether the prop-
erty has been abandoned for school purposes.  The
information you gave me is that you have ceased to
use the building for school purposes, but equipment
of this nature, which has had no active use, has
been stored in this building for a number of years.

"In view of the fact, it is therefore my opinion
that the property has been abandoned for school
purposes and the title thereto reverts to the
original grantor, together with all the improve-
ments situated thereon, save and except such per-
sonal property you may have located in this build-
ing which belongs to the Harper Independent School
District.  As an ordinary proposition at law, it
seems to be elementary that improvements built on
another man's property goes with the property.  But
in this case, if the improvements had not been re-
moved before the abandonment occurred, then I don't
think there is any question that the District would
have any rights to remove the property.  This is
merely common reasoning."

The question in which you are interested is stated in
your letter of October 26th, as follows:

"Whether or not the Independent School Dis-
trict of Harper, Texas as a successor of the
Common School District, has a right  to remove
a building from the property which was deeded
to the Common School by individuals, with a
condition, that if the property ceased to be
used as school property, the title thereto would
revert to the grantors, their heirs and assigns."

We do not have a copy of the deed for examination, nor
do we feel that we have sufficient information to pass upon
the question of abandonment.  We surmise from your letters that
there seems to be little doubt among the parties concerned that
the property has been abandoned.  We think it sufficient to say
that it has been held that the use of a building for the stor-

age of school furniture, books, etc., is not for "school pur-
poses" and does not prevent an abandonment of the property
under a deed specifying that the property was to be used for
such purposes and containing a reversionary clause.  See Put-
ney v. School Dist. No. 4 of Town of Brookfield (Wisc.), 255
N.W. 76; Richey v. Corralitos Union School Dist. of Santa
Cruz County (Calif.), 228 P. 348.  However, we think that so
long as the property is being used for school purposes, the
school district could make such improvements or remove the
same as would best serve  such school purposes.

We shall now pass to the question of whether a school
district may remove the school building after the property has
been abandoned for school purposes and, therefore, has reverted
to the grantor.  The property as originally conveyed was with-
out improvements, but the school district subsequently built
a schoolhouse thereon.

We quote the following excerpts from Texas Jurisprudence,
pages 950, 951, and 958:

"School trustees ordinarily have the exclus-
ive control and management of school property
and exclusive possession thereof.  In exercising
this discretion they may locate and construct
district buildings upon such sites, and in ac-
cordance with such plans and specifications as
in their judgment seem proper."

"* * * The laws of Texas, by implication at
least, require that the exclusive ownership and
control of school buildings of a district shall
be in the trustees thereof."

After an exhaustive research, we have found only one
Texas case precisely on the question of the removal of a school
house after the abandonment of property conveyed under a deed
for school purposes and containing a reversionary clause there-
in.  Such case is Allen et ux v. Franks et al. (W. E. Ref.),
166 S.W. 384.

Plaintiffs had conveyed certain property to the trus-
tees of a school district and their successors, and the deed
of conveyance contained the following stipulation: "Conditioned
that when the above-described land ceases to be used as school
purposes, the same shall revert to us."  Thereafter, with money
obtained through contributions by citizens of the school com-
munity a schoolhouse was erected on the property.  Defendants
as successors to the former trustees to whom the deed was exe-
cuted decided to consolidate the district with another district,

to move the house upon another location, and to abandon the land upon which the house was originally built. Plaintiffs instituted suit to enjoin the removal of the building and alleged that the building was part of the realty, that the land had been abandoned, and that by reason thereof the building as well as the land had reverted to them. It was contended that the contributions for the building were made with the distinct understanding with the trustees that the building was to remain upon the land permanently. The court, after citing Articles 2822, 2844, 2845, 2847, and 2849, R.S. 1911 (Articles 2748, 2752, 2754, and 2756, R.C.S., 1925), denied plaintiffs any relief and held that the trustees could remove the school building when the land ceased to be used for school purposes. We quote the following from the opinion of the court:

"When the funds were donated for the construction of the building, the title thereto passed to the trustees, and the building erected with such funds became subject to the provisions of the statutes above quoted. When the contributions were made for the erection of the building, persons making such contributions must be held to a knowledge of the statutory provisions giving absolute control of the building to the trustees and prohibiting the fixing of a lien of any character upon the building. * * * * *".

"If, at the time of the erection of the house, the trustees could make it a part of the realty by their intention to make it a permanent improvement upon the land, or by erecting the same without forming any intention at the time that they or their successors in office might remove it from the land in the event of a decision to abandon the land for school purposes, then they could control the title to the house indefinitely. Under express provision of the statutes title to the house became vested in the trustees and their successors in office as trustees for those to be benefited thereby 'under such rules as may be established by the state superintendent.' To give appellants' deed the construction insisted upon would, in effect, be to say that the trustees who received the deed would have the authority themselves to vest in appellants title to the schoolhouse without receiving any consideration therefor and would have authority to bind their successors in office to do the same. Clearly, this would not be in the interest of the patrons of the school

and thus deprive them of title to school property would be a breach of trust and contrary to public policy * * *".

"Certainly it was not within the spirit or intention of the statute that those who were beneficially interested in the building could be deprived of title thereto without receiving any consideration therefor by any arbitrary act of the trustees who erected it, when the purpose of such act was not to subserve any interest of the beneficiaries."

There would be even more reason for the court to hold as it did if the building had been erected with tax moneys.

Other states have reached apparently conflicting results. See Steel v. Rural Special School District No. 15 (Ark. Sup. Ct.), 20 S.W. (2d) 316; Webster County Board of Education v. Gentry (Ky. Ct. App.), 24 S.W. (2d) 910. AN earlier Texas case might be construed as being somewhat inconsistent with the Allen case. In the case of Stewart v. Blain (Civ. App.), 159 S.W. 928, the court had before it for consideration a deed whereby certain property was conveyed to the county judge and his successors in office for the purpose of erecting a schoolhouse for the benefit of the school community. The deed contained a clause "that in the event of the removal of the schoolhouse therefrom" the land should revert to the grantor or his heirs or assigns. A schoolhouse was built and the property was used for school purposes for several years; however, thereafter it was not so used, and the county judge, county commissioners, and school trustees attempted to convey the property to defendant. Plaintiffs were heirs and assigns of the original grantor. The court held, in part as follows:

"It seems to us that these provisions mean, and were intended to mean, that the grantees should own and use and enjoy the property so long as it was so used for the purpose for which it was conveyed, and that when this condition ceased the title and right of possession should at once revert to the grantor, 'or his heirs or assigns' * * * * *

"* * * This sale and the abandonment of the land for school purposes was to all intents and purposes 'a removal of the schoolhouse therefrom'. The building may be there yet, but it is not a schoolhouse."

However, even though the Stewart case has been cited many times as authority by more recent cases, we feel that we are compelled to follow the Allen case. The Allen case was later in time than the Stewart case, and writ of error was refused. Also, the precise question was involved in the Allen case, and not in the Stewart case, and if the Stewart case is inconsistent, it is only inferentially so. Therefore, until the opinion of the court in the Allen case is overruled or altered, we feel that we are compelled to follow the holding thereof.

You are, therefore, advised that where, under a deed containing a reversionary clause, land has been conveyed to a school district for school purposes only and thereafter a schoolhouse is erected thereon, the school district may remove such building when the property has been abandoned for school purpose and has reverted under the deed to the grantor.

Very truly yours

ATTORNEY GENERAL OF TEXAS


By s/George W. Sparks
George W. Sparks
Assistant

GWS/s/wc


APPROVED NOV 10, 1942
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman