In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00124-CR


______________________________




CARLOS BUSH, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 35053-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Carlos Bush appeals from his judgment of conviction for burglary of a habitation. The
sentence was imposed April 12, 2007. Bush did not file a motion for new trial. His notice of appeal
was filed July 19, 2007. 

 Pursuant to Rule 26.2, a notice of appeal must be filed within thirty days after the imposition
of sentence. See Tex. R. App. P. 26.2(a)(1). Therefore, Bush had until May 14, 2007, to file a notice
of appeal; the notice of appeal was filed some sixty-six days late. This appeal not having been filed
timely, we lack jurisdiction to hear this case.

 We dismiss this appeal for want of jurisdiction. 



 Bailey C. Moseley

 Justice


Date Submitted: July 30, 2007

Date Decided: July 31, 2007


Do Not Publish



. .

 

 If the said City of Houston shall abandon said park and/or cease to use and maintain the same for public park purposes
under the name of MacGregor Park or shall change or permit the name of said park to be changed from that of MacGregor
Park, then and in any such case the grant herein made of said premises to said City of Houston shall immediately cease and
terminate and the title to said land hereby conveyed shall revert to the person or persons entitled to take same under the will
of said Henry F. MacGregor, deceased, free and discharged of all rights, titles or claims of said City of Houston or any
person or persons, corporation or anyone else claiming under it.

 This case originated as a condemnation proceeding whereby the State sought to acquire from the City 6.729 acres of the
original land granted by the MacGregor heirs to the City, in order to construct State Highway 35. The trial court appointed
special commissioners, who entered an award of damages for the taking. Both the City and the MacGregor heirs objected
to the award. Before trial, the State, the City, and the MacGregor heirs settled on an amount of compensation for the
condemned acreage. The agreed compensation for the 6.729 acres was $425,000.00, which was deposited in the registry of
the court. The case then went to trial on the question of whether the 47.54 acres constituting the eastern portion of the
original park land had reverted to the MacGregor heirs because the City had abandoned or ceased to use that portion of the
land as a public park. At trial the City claimed title to all the land acquired in the deed from the MacGregor heirs, less the
6.729 acres acquired by the State, plus the $425,000.00 paid for the condemned parcel. The MacGregor heirs contended
the 47.54 acres of the original land deeded by them to the City for park purposes, generally described as that portion of the
original grant that is located east of Martin Luther King, Jr., Boulevard (MLK Boulevard), had reverted to them because the
City had violated the reverter clause of the deed. The MacGregor heirs also claimed the $425,000.00 because that money
had been paid for the 6.729 acres which, as a part of the 47.54 acres, had legally reverted to them before the condemnation
proceedings began. 

 The case was tried to a jury. The court's charge asked the jury:

 1. If the City, prior to December 10, 1996, ceased to use and maintain the 47.54 acres for public park purposes? The jury
answered "Yes." 

 2. If the City, prior to December 10, 1996, abandoned the 47.54 acres for public park purposes? The jury answered "No." 

 3. What was the market value, on December 10, 1996, of the 6.729 acres taken in condemnation, for public park purposes
only? The jury answered "$11,250.00."

 4. What was the market value, on December 10, 1996, of the 6.729 acres taken in condemnation, as unrestricted? The jury
answered "$425,000.00." 

The charge gave the jury a definition of "abandonment," but the trial court refused to give the jury the City's requested
definitions of "public park" and "public park purposes." 

 The City has assigned four issues on appeal. Its primary contention is that, because the jury found that the City had not
abandoned the 47.54 acres for public park purposes, it was error for the trial court to award title to that portion of the land
to the MacGregor heirs under the reverter clause. Along with that contention, the City argues that it did not cease to use and
maintain the 47.54 acres for public park purposes, because the MacGregor deed granted it the discretion to regulate the use
of that land as it saw fit, and specifically, to set aside certain acres for an undeveloped, natural state area as a part of
MacGregor Park. The City also contends the trial court erred by refusing to submit its requested definitions of "public
park" and "public park purposes." The City raises other issues concerning the propriety and proper effect of the
condemnation of the 6.729 acres, but because we approve the trial court's award of title to the MacGregor heirs, these
issues become immaterial and need not be discussed. 

 As noted earlier, the City's main contention here is that, because the jury found that the City did not abandon the 47.54
acres for public park purposes, the reverter provisions were not violated, and the award of title to the MacGregor heirs was
improper. We disagree.

 Our task in interpreting the terms and discerning the meaning of the reverter provisions is to ascertain, from a review of all
the words used in the deed, the intention of the parties to the deed in stating the reverter provisions. Wilmoth v. Wilcox, 734
S.W.2d 656 (Tex. 1987); Altman v. Blake, 712 S.W.2d 117 (Tex. 1986); Alford v. Krum, 671 S.W.2d 870 (Tex. 1984);
Smith v. Allison, 157 Tex. 220, 301 S.W.2d 608 (1956). The specific reverter clause in the deed here provides for a reverter
if the City shall "abandon said park and/or cease to use and maintain the same for public park purposes under the name of
MacGregor Park or shall change or permit the name of said park to be changed from that of MacGregor Park, . . . ." At
other places in the deed, the reverter conditions are mentioned without being coupled with or accompanied by a reference
to abandonment. Moreover, abandonment is different and distinct from nonuse. Abandonment is a technical legal concept
requiring evidence of a specific intent to relinquish a known right. Jasper County Lumber Co. of Tex. v. Smith, 91 S.W.2d
834 (Tex. Civ. App.-Beaumont 1936, writ dism'd). Nonuse, however, is simply a fact that may be proven by objective
evidence without evidence of an intent to relinquish. The City itself concedes that nonuse and abandonment are not
necessarily the same.

 Considering the reverter conditions, which are stated in the disjunctive and partially in the conjunctive, as well as the
separate references in the deed to other reverter conditions, we conclude that the parties to the deed intended for the reverter
provision to apply if any of the three named conditions occurred, i.e., either (1) abandonment, or (2) failure to use and
maintain the land for public park purposes, or (3) a change in the park's name. In this connection, we note that, after stating
these reverter conditions, the deed says that in any such case, the land will revert. Consequently, the jury's finding that the
City did not abandon the land for park purposes does not, in itself, defeat the MacGregor heirs' case for reverter based on
cessation of use, and the jury's finding that the City ceased to use and maintain the 47.54 acres for public park purposes, if
supported by sufficient evidence, authorized the trial court to declare the reverter.

 The City argues that the jury's finding that it ceased to use and maintain the 47.54 acres for public park purposes is not
supported by sufficient evidence because the undisputed evidence shows that, since MLK Boulevard bisected the original
park acreage, the City has maintained and held the 47.54 acres east of MLK Boulevard as undeveloped park land in its
natural state. Relying on various authorities giving legal definitions of a park as a place where the public may go for
various kinds of recreation and amusement, including undeveloped land in its natural, primitive state, the City contends
that, by not developing the 47.54 acres, but leaving it alone in its natural state without any active maintenance, it has "used"
those acres and maintained them "for public park purposes," as required by the deed. See Lewis v. City of Fort Worth, 126
Tex. 458, 89 S.W.2d 975 (1936); Harris County v. Collin, 365 S.W.2d 187 (Tex. Civ. App.-Texarkana 1963, writ ref'd
n.r.e.). Essentially, the City contends that, by not using the 47.54 acres but leaving it alone in its natural, primitive state, it
has used and maintained it for public park purposes.

 But we must point out that, in this case, we are not guided by the legal, or even the commonly accepted, definition of a
park. Rather, we are required to determine what the parties to the deed meant when they said the land would revert to the
grantors if the City ceased to use and maintain the land or any portion of it for public park purposes. The keys, we believe,
to properly interpreting the reverter language are the words "use" and "public." From a review of the language contained in
the deed as a whole, as well as a consideration of the grantors' purposes in making the grant, as stated in the deed, we
believe the parties did not intend the word "use" to mean "set aside for non use." We believe the parties meant that the City
would conduct some activity on the land to make it usable and accessible by the public for a public park. Likewise, we
believe by their use of the word "public" in the reverter provisions, they meant that the City would perform some
maintenance activity on the land that would make it accessible, attractive, and usable to the public.

 We will now review the evidence to determine if it is sufficient to support the jury's finding that the City failed to meet the
requirements of use and maintenance for public park purposes. 

 At the inception of MacGregor Park, the City made some effort to devote all of the acreage for park purposes. The City
developed the western portion of the property by constructing a swimming center, a baseball park, tennis courts, a
community center, paved roads, parking areas, playgrounds, hiking and biking trails, toilets, trash receptacles, and a statue
of Henry F. MacGregor, the donor. Initially, the eastern 47.54 acres was open to the public, but remained essentially
undeveloped. A park road known as MacGregor Way circled from the west end of the park through the east end of the park
to Old Spanish Trail, allowing public access throughout the park.

 In the 1950's, the City constructed what is now known as MLK Boulevard through the center of the 110-acre park area. 
MLK Boulevard is a four-lane thoroughfare that completely divides the original park into an eastern and a western portion. 
After the construction of MLK Boulevard, the City completely ceased to make any effort to include the 47.54 acres east of
MLK Boulevard as a part of the park. The City abandoned the park road that previously circled through the area, and the
entirety of the 47.54 acres has been allowed to become heavily wooded and overgrown with brush. MLK Boulevard
constitutes a barrier to the easy or safe access by the public to the 47.54 acres. There is no parking area for anyone who
wants to go on that portion of the land. There is one unused dirt road into the property that has not been used in years, and
in fact, is closed by a locked gate with a "No Trespassing" sign on it, erected by the Harris County Flood Control District,
which has in the past used the road to access its drainage areas.

 There has been no development whatsoever of the eastern 47.54 acres for recreational purposes. There are no swimming
pools, baseball fields, tennis courts, playgrounds, picnic tables, toilets, or trash receptacles. There are no hiking or biking
trails, no signage for directions or for inviting the public to use that area, and no nature trails. As the City candidly admits,
the 47.54 acres are left entirely undeveloped in their natural state, even to the point that, when dead trees fall, they are left
untended where they fall.

 The City's own park consultant, Sheila Condon, testified that, in her opinion, there is nothing on the 47.54 acres that would
constitute an invitation to the public to use that acreage as a park, even a natural, passive use park. In fact, she opined that
the 47.54 acres were not being used and maintained as a public park. In later testimony, Condon clarified her testimony by
saying that, other than the City's claimed "passive use," the City had not used the eastern portion of the land for public park
purposes. The City's deputy director of parks and recreation, Beto Bautisto, testified there is no existing public demand to
use the 47.54 acres for a public park. He said the City's only use of the land as a passive park was to allow the "trees to
grow and the birds to fly." Gregory Paul, a planner leader in the City's Parks and Recreation Department, testified by
deposition that there was no other use, to his knowledge, of the eastern 47.54 acres "other than the area being natural." The
City does not "bush hog," mow, or otherwise groom the natural growth on these acres, except that it has trimmed the grass
at the edge of MLK Boulevard's right-of-way on occasion. Robert Makela of the Harris County Flood Control District
testified that the 47.54 acres did not appear to be a public park. David Lewis testified he had lived in the neighborhood and
had attended MacGregor Elementary School as a child. He testified that, during his childhood, there was a road into the
eastern 47.54 acres, but that this road was eventually abandoned by the City, thereby depriving the public of access into the
eastern 47.54 acres.

 Almost all of the evidence is undisputed. There are some slight conflicts, but mainly this case turns on an interpretation of
the undisputed evidence on the question whether it shows that the City ceased to use and maintain the 47.54 acres for
public park purposes. We conclude that the evidence is legally and factually sufficient to support the jury's finding that the
City ceased to use and maintain the 47.54 acres for public park purposes.

 The City, however, argues that, under the MacGregor deed, it has the absolute discretion to police and regulate the use of
the land donated and that the MacGregor heirs cannot impose their notions of proper park uses in order to defeat the City's
title. We note, however, that the deed gives the City the discretion how to police and regulate the use of the land for park
purposes. It does not grant the City the discretion to decide not to use the property at all for public park purposes.
Therefore, the cases and other authorities cited by the City, holding that a municipality's discretion as to how it uses its
property cannot be dictated by third parties, are inapposite. The City here is bound by the MacGregor deed to use and
maintain the property for public park purposes, or allow the property to revert.

 The City also contends that the trial court erred in refusing to give the jury definitions of "public park" and "public park
purposes." The court correctly refused to define these terms for the jury. These terms are not terms of legal art, but are
general, well-known terms familiar to most people. As the jury could give them their usual and customary meaning, it was
unnecessary for the court to define them. See 4 Roy W. McDonald & Elaine A. Grafton Carlson, Texas Civil Practice §
22.25 (2d ed. 2001). Moreover, as we have noted earlier, the decisive question here is not whether the City used the
property as a public park as generally understood by the public, or as a legal matter, but what the parties to the reverter
provisions meant by the terms "use and maintain for public park purposes."

 As previously noted, the City raises other issues relating to the effect of the condemnation of the 6.729 acres (a part of the
47.54 acres) by the State and the payment of $425,000.00 for that taking. Because we hold that the reverter of the 47.54
acres was properly ordered, these issues become immaterial because the MacGregor heirs, by reason of the reverter,
became entitled to both the 40.811 acres left after the condemnation and to the $425,000.00 paid by the State for the 6.729
acres condemned.





 For the reasons stated, we affirm the judgment of the trial court.

 



 William J. Cornelius

 Justice





Date Submitted: May 29, 2002

Date Decided: July 17, 2002



Publish