# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-15-00051-CV

---

**Trent Lindig, Appellant**

**v.**

**Pleasant Hill Rocky Community Club, Appellee**

---

**FROM THE DISTRICT COURT OF BLANCO COUNTY, 33RD JUDICIAL DISTRICT
NO. CV07580, HONORABLE J. ALLAN GARRETT, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Trent Lindig appeals the district court's order construing a deed in favor of Pleasant Hill-Rocky Community Club. Lindig contends that the court erred in ruling that a reverter clause in the deed was not triggered when the property ceased being used for school purposes. We will affirm the district court's order.

## BACKGROUND

Lindig's great-grandfather, Albert Lindig, executed a deed on September 10, 1927, conveying a 1.3 acre parcel of land to "J.C. Goar, T.E. Patton, Scott Klett, J.J. Fuchs and Gus Artzt, the Blanco County Board of Trustees and their successors in office." The deed recited that the property was to be used for school purposes and contained the reverter clause at issue:

> I, Albert Lindig, . . . have granted, sold, given, and conveyed . . . unto the said J.C.
> Goar, T.E. Patton, Scott Klett, J.J. Fuchs and Gus Artzt, the Blanco County Board
> of Trustees and their successors in office, the following described tract or parcel of

land . . . ; said above described tract or parcel of land shall be used for School purposes for the Pleasant Hill School District No. 21. But it is understood that in case the said School House or any other house which may be built and used for a School house is removed from said land herein described then the said above described land shall revert back to me, my heirs, assigns or legal representatives.

From 1927 until 1952, the property was used as a school. In August 1952, the successor members of the Blanco County Board of Trustees (Aaron Posey, Edgar Heins, Joyce Goar, C.W. Freer, and Oscar Jones Jr.) executed a deed and conveyed the property to Louis Lindig (Lindig's great-great uncle), Alfred Brodbeck, August Ludwig, Earnest Petri, Levi Deike, Emil Hartmann, and Walter Ludwig and their successors in office, as Trustees of the Pleasant Hill Improvement Association, to be cared for "as a Community Center for the benefit of Pleasant Hill Community in Blanco County, Texas." The Pleasant Hill Improvement Association, later renamed the Pleasant Hill-Rocky Community Club, took possession of the property in 1952. The 1952 Deed acknowledged that the property was "formerly used for school purposes but now no longer so used" and that there was a reversionary interest set forth in the 1927 Deed. The building once used as a school remained on the property. The Club's use of the property continued unchallenged until 2013, when a commercial enterprise offered to rent the school property from Lindig.

Lindig then brought actions for trespass to try title, quiet title, and declaratory judgment against the Club, seeking to confirm his ownership of the property. The Club, in turn, asserted that it was the rightful owner of the property. Both parties' motions for summary judgment were denied. They subsequently requested that the district court construe the 1927 Deed and its reverter clause—which the parties agree is unambiguous—under Texas Rule of Civil Procedure 248. *See* Tex. R. Civ. P. 248 (stating that when jury has been demanded, questions of law shall be heard

2

and determined by the court before the trial commences). After a hearing, the court found that the Club has current title to the subject property because the circumstances that would trigger the reverter clause have not occurred. The court signed an order incorporating its oral rulings. The court also signed an order, pursuant to the parties' agreement, permitting Lindig to seek an immediate appeal of the order. *See* Tex. Civ. Prac. & Rem. Code § 51.014(d). This appeal followed.

## DISCUSSION

Lindig challenges the district court's order in a single issue, arguing that his reversionary interest in the property became a present possessory interest in 1952 when the school ceased to operate on the land.

**Standard of review**

The construction of an unambiguous deed and its reverter clause presents a question of law, which we review de novo. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991); *Cooke v. Morrison*, 404 S.W.3d 100, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *City of Houston v. Van De Mark*, 83 S.W.3d 864, 867 (Tex. App.—Texarkana 2002, pet. denied). The primary duty of a court when construing an unambiguous deed is to ascertain the parties' intent as expressed in the four corners of the deed. *Luckel*, 819 S.W.2d at 461. In applying the "four corners" rule, we do not look at isolated terms but rather consider the instrument as a whole and attempt to harmonize and give effect to all of its provisions. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex. 1995). We look to the intent that is expressed by the instrument, not the intent that the parties may have failed to express in the instrument. *Alford v. Krum*, 671 S.W.2d 870, 872 (Tex. 1984), *overruled on other grounds by Luckel*, 819 S.W.2d at 464. It is presumed that every clause is "to

3

have some effect; therefore, the language of the deed should be interpreted so that no provision is rendered meaningless." *Hausser v. Cuellar*, 345 S.W.3d 462, 466 (Tex. App.—San Antonio 2011, pet. denied). We give the language its plain, grammatical meaning unless doing so would clearly defeat the parties' intentions. *Tana Oil & Gas Corp. v. Cernosek*, 188 S.W.3d 354, 359 (Tex. App.—Austin 2006, pet. denied). We must construe the language as it is written and cannot alter it by interpolation or substitution. *Dahlberg v. Holden*, 238 S.W.2d 699, 701 (Tex. 1951).

A person conveying property can retain an interest in the property through a reversionary interest. *El Dorado Land Co. v. City of McKinney*, 395 S.W.3d 798, 802 (Tex. 2013). A "possibility of reverter" describes "a future interest retained by a grantor that conveys a determinable fee; 'it is the grantor's right to fee ownership in the real property reverting to him if the condition terminating the determinable fee occurs.'" *Id*. at 801 n.6 (quoting *Luckel*, 819 S.W.2d at 464). Thus, a grantee forfeits his interest in the property and ownership automatically returns to the grantor (or his heirs) if the limitation imposed by the deed is breached. *See Cypress-Fairbanks Indep. Sch. Dist. v. Glenn W. Loggins, Inc.*, 115 S.W.3d 67, 70-71 (Tex. App.—San Antonio 2003, pet. denied); *see also El Dorado Land Co.*, 395 S.W.3d at 803. No particular words are required to create a possibility of reverter. *Bagby v. Bredthauer*, 627 S.W.2d 190, 196 n.4 (Tex. App.—Austin 1981, no writ). A trespass to try title action is the exclusive means by which a claimant can demonstrate his title to real property. *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004) (quoting Tex. Prop. Code § 22.001(a)). As a general rule, the instrument containing the reverter clause must be construed most strongly against the grantor, and forfeiture of an estate is disfavored. *Pitts v. Camp Cnty.*, 39 S.W.2d 608, 616-17 (Tex. 1931) (concluding that property should not revert

to grantor's heirs because only condition in conveyance that would defeat grantees' title had not occurred).

**Lindig claims a reversionary interest in the property**

Lindig argues that the reverter clause was triggered in 1952 when the school house was no longer being used for school purposes. He relies on several references in the deed, separate from the reverter clause, stating that the property shall be used "for school purposes only." Lindig argues that his interpretation of the school-purpose restriction gives effect to the entire deed, and that these general references to purpose compel a determination that the reverter clause was triggered when the property was no longer used for school purposes.

To support his argument, Lindig relies on a 1913 Galveston case construing a similar reverter clause, *Stewart v. Blain. See* 159 S.W. 928, 929 (Tex. Civ. App.—Galveston 1913, no writ). The deed at issue in *Stewart* recited that the grantor was conveying a one-acre tract of land to the county judge and his successors in office "for the purpose of erecting a schoolhouse, for the benefit of the colored school community No. 4." *Id.* The deed further recited that "in the event of the removal of the schoolhouse therefrom by said county judge and his successors in office the said acre of land shall revert back to me or my heirs or assigns, and this deed shall become thereafter void and inoperative." *Id.* County officials took possession of the property under the deed and used it for school purposes for twenty-five years until it was sold, but the school house remained on the property after the sale. *Id.* at 930. In construing this deed, the Galveston court stated that "the sale and abandonment of the land for school purposes was to all intents and purposes a removal of the schoolhouse therefrom; the building may be there yet, but it is not a schoolhouse." *Id.* at 931.

5

Relying on *Stewart*, Lindig contends that his reversionary interest was triggered when the property ceased being used for school purposes.

**The Club disputes that the reverter clause has been triggered**

The Club contends that the *Stewart* court incorrectly based its decision on what the drafter of that deed meant to say, rather than upon the words actually used. In the Club's view, the *Stewart* court went beyond the express language of the reverter clause ("removal of the school house from the property") to infer that the grantor intended an additional trigger (failure to use the school house as a school) for the reversion of the property. The Club contends that the possibility of reverter in the 1927 Deed was not triggered because the reverter clause refers only to removal of the school house ("in case the said School House or any other house which may be built and used for a School house is removed from said land . . . then the said . . . land shall revert"), and it is undisputed that the building once used as a school house has never been removed from the property. The Club also contends that its interpretation of the 1927 Deed is compelled by the distinct separation of the reverter clause from the clauses containing the "school purposes" language. Further, the Club contends that this Deed must be construed against forfeiture and strictly against the grantor—Albert Lindig—who could have triggered the reverter clause on failure to use the property for school purposes but did not. *See Pitts*, 39 S.W.2d at 616-17; *see also Dickenson v. Board of Trustees of Chico Indep. Sch. Dist.*, 204 S.W.2d 418, 423 (Tex. Civ. App.—Fort Worth 1947, writ ref'd) (rejecting interpretation of reverter clause that would require improvements to become part of realty and revert with land in case of abandonment for school purposes because "our courts are averse to forfeitures, and will avoid them unless no other reasonable construction

6

can be placed upon the contract"). The Club maintains that Lindig cannot prevail on his trespass to try title claim and is not entitled to possession of the property because the school house has not been removed and thus, under the express language of the 1927 Deed, the reverter clause has not been triggered.

We agree. The reverter clause in this 1927 Deed specifies only one trigger, "in case the said School House or any other house which may be built and used for a School house is removed from said land herein described. . . ." By contrast, a number of cases address reverter clauses where grantors intended to include a possibility of reverter if the property ceased being used for school purposes and their deeds expressed such intent specifically. *See, e.g.*, *Dickenson*, 204 S.W.2d at 420 (1921 deed specified "should property hereinafter described cease to be used for school purposes . . . the said premises shall then and there and wholly and absolutely revert to the grantor"); *Campbell v. Jones*, 230 S.W. 710, 715 (Tex. Civ. App.—Amarillo 1921, no writ) ("if the schoolhouse to be erected on said tract of land be moved or destroyed, and the use of that land for school purposes be permanently abandoned, then the said land shall revert to the grantors"); *Allen v. Franks*, 166 S.W. 384, 385 (Tex. Civ. App.—Fort Worth 1914, writ ref'd) ("when the above described land ceases to be used as school purposes, the same shall revert to us").

The Texas Supreme Court addressed a similar case where a grantor's heirs sought construction of a reverter clause conveying property to a county for a courthouse and other public buildings but providing that the property would revert if the county seat were moved:

> I, William H. Pitts . . . have granted, bargained, sold and conveyed, and do by these presents grant, bargain, sell and convey unto the said W. R. Barnes, presiding Justice as aforesaid, and his successors in office the following described lots or parcels of

7

land . . . as a place for erecting the courthouse, and any other public buildings which may be necessary for said County of Camp.

. . . .

Nevertheless, the condition of this conveyance is such that if the county seat should be hereafter removed to any place in the said county, then, and in that case, this obligation shall be null and void, and the property herein conveyed shall revert to the said W. H. Pitts, his heirs or assigns.

*Pitts*, 39 S.W.2d at 609-10. The county built a courthouse and other public buildings on the property but abandoned their use more than fifty years year later when they became insufficient to meet the county's needs. *Id*. at 616. However, the county seat was not moved. *Id*. The grantor's heirs brought a trespass-to-try-title suit against the county and the city, arguing that the property had ceased to be used as a site for the courthouse and other county buildings and should revert.

The Texas Supreme Court concluded that the reverter clause had not been triggered, despite the general purpose language specifying that the land be used for county buildings, because the only condition that should defeat the grantees' title was the removal of the county seat. *Id*. at 616-17 (stating that grantor effectively declared his conveyance to be valid "so long as the county seat of Camp [C]ounty should remain within the territory of that town, as it was then situated, but that upon its removal from that territory, the property should revert to him and his heirs and assigns"). *Id*. The Court held that the heirs had no cause of action against the county without proof that the county seat had been removed from the location where it existed when the property was conveyed, and until then the county was entitled to unrestricted possession of the property. *Id*. at 617.

8

In reaching its decision, the Court quoted from a case in which the grantor conveyed property to certain college trustees to incorporate and perpetually operate a college or institution of learning under the control of the Trinity Presbytery. *Id*. at 616 (quoting *Glen Rose Collegiate Inst. v. Glen Rose Indep. Sch. Dist.*, 125 S.W. 379, 382 (Tex. Civ. App.—Waco 1910, writ ref'd). A reverter clause in the deed specified that if Trinity failed to: (1) incorporate the Glen Rose Collegiate Institute under Texas law and (2) furnish a principal for the college free of charge to the patrons of the college for five consecutive years, then Trinity would forfeit all right to the college building and grounds conveyed and same would revert to the grantor and become a public school building for the community of Sommervell County, Texas. *Glen Rose Collegiate Inst.*, 125 S.W. at 380. Both of those initial conditions were met, but the college was subsequently abandoned, and the school district argued that failure to perpetually maintain the college resulted in forfeiture of the property. *Id.* at 382. The *Glen Rose* court disagreed, noting the significance of the fact that perpetually maintaining a college or institution of learning was generally mentioned in the deed as a purpose for its execution but "was omitted from the only clause providing for an absolute forfeiture of the land granted." *Id*. at 380. The *Glen Rose* court concluded that the college did not forfeit the property because the "only two express conditions of absolute defeasance or forfeiture"—failing to incorporate and failing to furnish a principal for free for five consecutive years—did not occur. *Id*. at 382.

Similarly here, although the conveyance for school purposes is set forth generally in the deed, the reverter clause does not terminate the grantees' ownership of the property if it ceases being used for school purposes. Rather, the reverter clause expressly states that it is triggered only if a school house is removed from the land. ("But it is understood that in case the said

9

School House or any other house which may be built and used for a School house is removed from said land herein described then the said above described land shall revert back to me, my heirs, assigns or legal representatives."). This trigger complies with the plain language of the reverter clause and harmonizes with the four corners of the 1927 Deed because removal of "the said School House or any other house which may be built and used for a School house"—i.e., the school house's nonexistence—could be seen as permanently abandoning the use of the land for school purposes. It is undisputed that the building once used as a school remains on the property. Construing the language in this deed as a whole and giving effect to every clause, we conclude that the reverter clause has not been triggered.

## CONCLUSION

We affirm the district court's order.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   August 28, 2015

10